UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH RHINEHART (#123918),

                         Plaintiff,

v.

DEBRA SCUTT, BETH GARDON,
BONNIE CLEMENT (ROBERGEIN),
CONNIE IVES, KAREN HAMBLIN,
JOYCE POTTER,
PRISON HEALTH SERVICES, INC.,
AETNA, INC., VERNON STEVENSON,
PADMAJA VEMURI and
ADAM EDELMAN,

                         Defendants,
_____/

CASE NO. 2:11-CV-11254
JUDGE STEPHEN J. MURPHY, III
MAGISTRATE JUDGE PAUL J. KOMIVES

**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTIONS FOR TEMPORARY RESTRAINING ORDER AND / OR PRELIMINARY INJUNCTION**
**(Doc. Entries 3, 62, 79 and 82)**

**Table of Contents**

I.      **RECOMMENDATION:** .................................................................. 2

II.     **REPORT:** .................................................................................. 2
      A.     **Plaintiff's Previous Case (Case No. 2:10-cv-10006-SJM-PJK)** ....................... 2
      B.     **Plaintiff's Instant Complaint** ................................................ 6
      C.     **Plaintiff is Now Represented by Counsel.** ....................................... 7
      D.     **There Are Eight (8) Pending Motions.** ........................................... 7
      E.     **Plaintiff's Motions for a Temporary Restraining Order and/or Preliminary Injunction** ... 8
            1.     **Plaintiff's March and June 2011 Motions Filed Pro Se (Doc. Entries 3 and 62)** ... 8
            2.     **Plaintiff's August 2011 Motions Filed by Counsel (Doc. Ent. 79 and 82)** ........ 10

III.    **NOTICE TO PARTIES REGARDING OBJECTIONS:** .................................... 18

**I.     RECOMMENDATION:** The Court should deny as moot plaintiff's pro se March 29, 2011 emergency motion for a temporary restraining order and/or preliminary injunction (Doc. Ent. 3) and June 17, 2011 motion for temporary restraining order (Doc. Ent. 62). Furthermore, the Court should deny plaintiff's August 17, 2011 emergency motion for a temporary restraining order and/or preliminary injunction (doc. Ent. 79) and plaintiff's August 29, 2011 amended emergency motion for a temporary restraining order and/or preliminary injunction (Doc. Ent. 82).[1]

**II.     REPORT:**

**A.     Plaintiff's Previous Case (Case No. 2:10-cv-10006-SJM-PJK)**

**1.**     Kenneth Rhinehart (#123918) is currently incarcerated at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan, where he is serving a life sentence for a May 27, 1973 violation of Mich. Comp. Laws § 750.316 (First Degree Murder) and a life sentence for

---

[1]This report and recommendation is limited solely to the issue of whether plaintiff is entitled to a temporary restraining order or preliminary injunction. The Court is aware that plaintiff's counsel has raised some discovery concerns. *See* Doc. Ent. 90 at 6 ("Expert witnesses who will testify, like Dr. Walden, may do so after they submit their reports."); Doc. Ent. 94 at 6 ("this Court should be [d]iligent to preclude manipulative conduct by these Defendants designed to thwart the expert disclosure of Dr. Walden and the discovery process."); Doc. Ent. 101 at 2 ("Plaintiff does have the right to the names and addresses of these un-named persons, and if this Court does allow [Dr. Edelman's] affidavit to stand, then Plaintiff should be given the names of these persons for further investigation once discovery is open.").

To date, the Court has not yet entered a case management order. On June 21, 2011, I entered an order (Doc. Ent. 64) which, in part, denied plaintiff's May 5, 2011 motion for discovery conference (Doc. Ent. 36). On November 21, 2011, I entered an order (Doc. Ent. 114) which, in part, granted the PHS defendants' May 23, 2011 motion for protective order staying discovery (Doc. Ent. 54). This order stayed discovery pending resolution of the pending dispositive motions.

Once the Court addresses plaintiff's requests for injunctive relief (Doc. Entries 79 and 82) and decides the pending motions to dismiss and for summary judgment (Doc. Entries 22, 28, 57 and 58), I will consider noticing a Fed. R. Civ. P. 26(f) conference, at which time plaintiff's discovery concerns may be addressed.

a June 4, 1990 violation of Mich. Comp. Laws § 750.349a ("Prisoner taking person as hostage."). *See* www.michigan.gov/corrections, "Offender Search."

On January 4, 2010, while incarcerated at JCF, Rhinehart filed a complaint against several defendants regarding an alleged denial of medical care. The facts underlying the complaint begin with his July 16, 2009 transfer to Alger Correctional Facility (LMF) in Michigan's Upper Peninsula, continuing with his October 29, 2009 arrival at JCF, and concluding with the December 11, 2009 cancellation of his appointment (¶¶ 10-27). Doc. Ent. 1 at 1-9 .

**2.** He filed an amended complaint on January 27, 2010. Doc. Ent. 9. Named as defendants are: D. Scutt, Warden at JCF; B. Gardon, Health Unit Manager; medical records custodian B. Clement; Nurse Supervisor C. Iver; Registered Nurse K. Hamblin; J. Potter, the official responsible for the managed care of plaintiff; Prison Health Services (PHS), a private corporation that provides health services to prisoners; and Drs. V. Stevenson, P. Vemuri, and Adleman, PHS employees who provided care to petitioner. Defendants Scutt, Gardon, Clement, Iver, and Hamblin will be referred to as the "MDOC defendants," and defendants PHS, Stevenson, Vemuri, and Adleman will be referred to as the "medical defendants."

Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Specifically, plaintiff contends that defendants failed to appropriately treat an abdominal condition which caused pain and discomfort. He alleges that he first complained on August 9, 2009, while incarcerated at LMF. At that time he was seen by a nurse, who prescribed a laxative and scheduled blood work and a doctor visit. Plaintiff was seen by Dr. Aster Berhane on August 12, who noted a palpable mass 12-14 centimeters in diameter

3

near the epigastric area. Dr. Berhane suspected a cancerous growth.  Beginning at this time and continuing through October 2009, plaintiff received various consultations with Dr. Berhane and with outside doctors. Plaintiff's treating doctors recommended further oncology consultation as well as a liver biopsy. It was eventually determined to transfer petitioner to JCF to better serve his medical needs.  *See* Doc. Ent. 9 ¶¶ 15-29.

     Plaintiff arrived at JCF on October 27, 2009. He alleges that upon his arrival, he was not seen by health services within 24 hours, nor within the 14 days required by MDOC Policy Directive 03.04.100. On November 2, he submitted a health services kite complaining of increasing pain in his liver area, but received no response. *See* Doc. Ent. 9 ¶¶ 30-31. He was scheduled to be seen at health services on November 6, but the appointment was canceled. *See* Doc. Ent. 9 ¶ 32. He sent a second kite on November 16, requesting a visit with an oncologist and a liver biopsy, as had been approved while he was incarcerated at LMF. He received no response to this request. *See* Doc. Ent. 9 ¶ 33. Plaintiff alleges that he also sent a letter to the health care administrator, but received no response. *See* Doc. Ent. 9 ¶ 34. On December 4, 2009, he filed a grievance about the treatment of his liver fibrosis, the failure of prison officials to perform an intake health screen, and the failure to provide him with an oncology consult or liver biopsy. Plaintiff also asked about a liver transplant, and complained of increasing pain in his liver which was exacerbated by his work assignment. On December 8, defendant Hamblin responded to the grievance, indicating that plaintiff's request was routine, not urgent, and that an intake health screen first had to be conducted. *See* Doc. Ent. 9 ¶¶ 35-36. On both December 10 and December 11, plaintiff was placed on the health care call-out for an intake screening, but the call-outs were cancelled. *See* Doc. Ent. 9 ¶¶ 37-38. On December 15, defendant Gardon filled

out a progress note indicating that plaintiff had been scheduled twice for an intake screen, but that plaintiff was not seen for an unknown reason. *See* Doc. Ent. 9 ¶ 39. On December 30, nurse Joy Ryan filled out an orders summary form indicating that plaintiff should be seen by defendant Stevenson by January 5, 2010. However, petitioner did not see Dr. Stevenson. Rather, on January 4, 2010, plaintiff was seen by defendant Vemuri, who ordered lab tests to be done. *See* Doc. Ent. 9 ¶ 40-41. On January 7, plaintiff filed a grievance against defendant Vemuri, complaining that Vemuri had not adequately addressed his pain issues.  The grievance was rejected on January 8 as untimely. *See* Doc. Ent. 9 ¶¶ 42-43. On January 12, plaintiff filed a formal complaint with Chief Medical Officer George Pramstaller. *See* Doc. Ent. 9 ¶ 44.

Plaintiff alleges that he "has repeatedly requested to be seen by health services here at [JCF] due to his ever increasing severe pain and deteriorating condition. The Plaintiff has repeatedly kited and expressed concerns about not being scheduled for healthcare in-take callout, because without that he can't see a doctor about his pain or be scheduled for an appointment to be seen by an oncologist or liver specialist for his life threatening condition." Doc. Ent. 9 ¶ 45. He contends that defendants' actions and omissions constitute deliberate indifference to his serious medical needs amounting to cruel and unusual punishment under the Eighth Amendment. *See* Doc. Ent. 9 ¶¶ 46-55.  Plaintiff seeks declaratory and injunctive relief; $600,000 dollars in compensatory damages; and $640,000 in punitive damages.

**3.**     On September 15, 2010, Judge Murphy entered an order (Doc. Ent. 108) adopting my August 16, 2010 report and recommendation (Doc. Ent. 95) and denying plaintiff's: (1) three motions for preliminary injunction (Doc. Entries 2, 16 and 24); (2) motion for physical

examination (Doc. Ent. 58); (3) two motions to strike (Doc. Entries 30 and 60); and (4) motion for default judgment (Doc. Ent. 31).

On February 16, 2011, Judge Murphy entered an order (Doc. Ent. 131) adopting my January 14, 2011 report and recommendation (Doc. Ent. 126), granting defendants' motions to dismiss (Doc. Entries 33, 45, & 84), and denying plaintiff's motion for summary judgment (Doc. Ent. 57). *See also* Doc. Ent. 132 (Judgment).

Subsequently, on March 10, 2011, plaintiff filed a motion for an emergency preliminary injunction. Doc. Ent. 133. Judge Murphy denied this motion on March 23, 2011. Doc. Ent. 135.

**B.     Plaintiff's Instant Complaint**

On March 29, 2011, while incarcerated at JCF, Rhinehart filed a verified, pro se prisoner civil rights complaint against Scutt, Gardon, Clement, Ives, Hamblin, Potter, PHS, Aetna, Stevenson, Vemuri and Edelman. Doc. Ent. 1 at 1, 4-5, 8-10.[2] The facts underlying this complaint begin with an August 11, 2009 doctor's appointment at LMF and continue through plaintiff's November 12, 2010 hiring of a medical specialist who reviewed plaintiff's medical file and wrote a report. Doc. Ent. 1 at 11-20 ¶¶ 18-57. Plaintiff sets forth claims for relief (Doc. Ent. 1 at 21-25 ¶¶ 58-68), and he seeks declaratory, injunctive, compensatory and punitive relief. Doc. Ent. 1 at 26-28.[3] *See also* Doc. Ent. 3 at 29-30 (Declaration).

---

[2]Plaintiff asserts that he has exhausted all claims as to all defendants by JCF-09-12-02781-12d1 (Exhibit Q [Doc. Ent. 1-1 at 28-39]) and JCF-10-01-00119-12f4 (Exhibit W [Doc. Ent. 1-2 at 3-9]). Doc. Ent. 1 at 10 ¶ 17.

[3]*See also* Doc. Ent. 1 at 29-50 (Exhibits A-H), Doc. Ent. 1-1 at 1-50 (Exhibits I-V), Doc. Ent. 1-2 at 1-43 (Exhibits V-Z2).

Along with the complaint, plaintiff filed an application to proceed without prepayment of fees. Doc. Ent. 2. Magistrate Judge Whalen granted this application on April 6, 2011. Doc. Ent. 5. On April 11, 2011, the Clerk of the Court acknowledged receipt of the $350.00 civil filing fee.[4]

On May 3, 2011, this case was reassigned from Judge Duggan to Judge Murphy. Doc. Ent. 31. Judge Murphy has referred this case to me for pretrial matters. Doc. Ent. 43.

**C.    Plaintiff is Now Represented by Counsel**.

On May 16, 2011, plaintiff filed a declaration in support of his motion for appointment of counsel. Doc. Ent. 45. Then, on June 21, 2011, I entered an order which, in part, directed plaintiff to refrain from filing further motions without leave of Court. Doc. Ent. 64. In late July 2011, attorney Paul J. Zalewski filed an appearance on plaintiff's behalf. *See* Doc. Entries 75-78.

On November 15, 2011, I noticed a status conference for November 17, 2011. On that date, I conducted a telephonic conference with attorneys Paul J. Zalewski, A. Peter Govorchin, Carly A. Van Thomme and Paul A. Wilhelm.

**D.    There Are Eight (8) Pending Motions.**

---

[4]On April 7, 2011, Magistrate Judge Whalen entered an order directing service without prepayment of costs and authorizing the U.S. Marshal to collect costs after service is made. Doc. Ent. 6. That same day, the U.S. Marshal acknowledged receipt of eleven (11) copies of the complaint for service of process upon defendants. Doc. Ent. 7. On April 8, 2011, the U.S. Marshal attempted service of process by mail.

Appearances of counsel have been entered on behalf of several defendants. Doc. Entries 9, 10, 16, 23, 25, 33 and 35. Executed waivers of service have been returned as to Vemuri, Scutt, Clement, Hamblin, Ives, Potter, Gardon, Stevenson and Aetna, Inc. Furthermore, defendants PHS, Vemuri, Edelman and Stevenson (PHS Defendants) have filed answers to the complaint. Doc. Entries 20 and 26.

This case has been referred to me to conduct all pretrial matters. Doc. Ent. 43. There are currently eight (8) motions pending before this Court:

- Plaintiff's March 29, 2011 emergency motion for a temporary restraining order and/or preliminary injunction (Doc. Ent. 3);
- The PHS defendants' April 28, 2011 motion to dismiss (Doc. Ent. 22);
- Stevenson's May 2, 2011 motion to dismiss (Doc. Ent. 28);
- The MDOC defendants' June 7, 2011 motion for summary judgment (Doc. Ent. 57);
- Aetna's June 7, 2011 motion to dismiss (Doc. Ent. 58);
- Plaintiff's June 17, 2011 motion for temporary restraining order (Doc. Ent. 62).
- Plaintiff's August 17, 2011 emergency motion for temporary restraining order and/or preliminary injunction (Doc. Ent. 79)
- Plaintiff's August 29, 2011 *amended* emergency motion for temporary restraining order and/or preliminary injunction (Doc. Ent. 82)

### E.     Plaintiff's Motions for a Temporary Restraining Order and/or Preliminary Injunction

### 1.     Plaintiff's March and June 2011 Motions Filed Pro Se (Doc. Entries 3 and 62)

**a.** On March 9, 2011, the same day he filed the instant complaint, plaintiff also filed an emergency motion for a temporary restraining order and/or preliminary injunction. Doc. Ent. 3 at 1-2; Doc. Ent. 3 at 3-19 (Brief); Doc. Ent. 3 at 20-23 (Nov. 12, 2010 Medical Report of Jerry S. Walden, M.D., F.A.A.F.M.); Doc. Ent. 3 at 24-27 (Declaration); Doc. Ent. 3 at 31-32 (Proposed Order to Show Cause). Therein, plaintiff requests that the Court require defendants "to schedule plaintiff to be seen by a qualified liver specialist so he can receive a qualified treatment plan to prevent a more rapid onset of his advanced liver disease which the defendants are not treating him for." Plaintiff also asks that the Court "order defendants to schedule plaintiff for an appointment to see a liver specialist so plaintiff can be evaluated and placed on a liver transplant list." Doc. Ent. 3 at 2.

Judge Duggan referred this motion to Magistrate Judge Hluchaniuk for a report and recommendation. Doc. Ent. 12. The PHS defendants filed a response on April 28, 2011. Doc. Ent. 19. On May 2, 2011, defendant Stevenson filed a concurrence with the PHS defendants' response. Doc. Ent. 30.

The following day, the case was reassigned from Judge Duggan and Magistrate Judge Hluchaniuk to Judge Murphy and the undersigned. Doc. Ent. 31. On June 7, 2011, defendant Aetna filed a response. Doc. Ent. 59. Thereafter, Judge Murphy referred plaintiff's motion to me for report and recommendation. Doc. Ent. 65.

**b.**     On June 17, 2011, plaintiff filed a motion for temporary restraining order. Doc. Ent. 62 at 1-3; Doc. Ent. 62 at 4-5 (Plaintiff's Declaration); Doc. Ent. 62 at 6-7 (Declaration of David Rhinehart); Doc. Ent. 62 at 8-9 (Declaration of Mark Boussum, Paralegal (#160825)); Doc. Ent. 62 at 10-17 (Memorandum of Points and Authorities); Doc. Ent. 62 at 18-22 (ACLU of Michigan Hepatitis Protocol). Therein, plaintiff explains that he "has advanced liver disease caused by chronic Hepatitis C, and seeks an order requiring that he be seen immediately, and regularly thereafter, by a hepatologist and an outside transplant liver specialist, and that Defendants all follow recommendations and prescriptions of the[] specialist hepatol[o]gist into effect in a diligent manner." Doc. Ent. 62 at 11-12. Plaintiff also sets forth five (5) specific requests:

> 1.     A physician at [JCF] examines [plaintiff] immediately and order a follow up for endoscopy procedure (EGD) to check the esophageal varicies and banding that he had done a year ago, to see if banding is holding or if varicies have reappeared.
>
> 2.     To have a liver specialist (hepatologist) transplant specialist examine him within the next 7 days and at least every month thereafter, or as required by the specialist.

3. The treatment recommendations of the specialist examining Rhinehart be carried out, or unless refused by Rhinehart.

4. All medications prescribed by the specialist, be followed promptly by the prison physicians treating Plaintiff and be promptly and reliably provided to Plaintiff Rhinehart at [JCF].

5. That all dietary needs, *i.e.*, food, supplements prescribed by the hepatologist, be prescribed by facility physicians treating Plaintiff and must be promptly and reliably provided to Rhinehart by [JCF].

Doc. Ent. 62 at 16-17.

On June 20, 2011, the PHS defendants filed a response. Doc. Ent. 63. The MDOC defendants filed a status report in response to plaintiff's motion on June 30, 2011. Doc. Ent. 67. On July 5, 2011, defendant Aetna filed a response to plaintiff's motion. Doc. Ent. 69.

On July 22, 2011, plaintiff filed a verified, pro se reply to the MDOC defendants' status report. Doc. Ent. 74 at 1-7. Attached to this filing are David Prough, M.D.'s June 18, 2011 Addendum to Surgical Consultation Performed by Samantha Stokes (Doc. Ent. 74 at 8-9 [Allegiance Health]) and Kim Wilson, N.P.'s June 28, 2011 Final Progress Note / Discharge Summary (Doc. Ent. 74 at 10-13 [Allegiance Health]).

c. Since the July 26, 2011 appearance of plaintiff's counsel, attorney Zalewski has filed the August 2011 motions for temporary restraining order and/or preliminary injunction (Doc. Entries 79 and 82) described below. Therefore, the Court should deny as moot the aforementioned *pro se* motions for temporary restraining order and/or preliminary injunction (Doc. Entries 3 and 62).

2. **Plaintiff's August 2011 Motions Filed by Counsel (Doc. Ent. 79 and 82)**

a. During the November 17, 2011 conference, plaintiff's counsel notified the Court that plaintiff was hospitalized on October 27, 2011 and that the most critical motions to be addressed

10

are plaintiff's August 17, 2011 emergency motion for temporary restraining order and/or preliminary injunction (Doc. Ent. 79) and (2) plaintiff's August 29, 2011 *amended* emergency motion for a temporary restraining order and/or preliminary injunction (Doc. Ent. 82). There are a host of filings related to these motions:

- **Plaintiff's August 17, 2011 emergency motion for temporary restraining order and/or preliminary injunction (Doc. Ent. 79)**
- Defendant Aetna's August 25, 2011 response (Doc. Ent. 80)
- **Plaintiff's August 29, 2011 amended emergency motion for temporary restraining order and/or preliminary injunction (Doc. Ent. 82)**
- PHS defendants' August 30, 2011 response (Doc. Ent. 83) & Selected Medical Records of Plaintiff (Doc. Ent. 84 - SEALED)
- MDOC defendants' August 31, 2011 concurrence with defendant Aetna's response (Doc. Ent. 87)
- PHS defendants' September 9, 2011 supplemental brief (Doc. Ent. 89), to which is attached the affidavit of Richard Kosierowski, M.D. (Doc. Ent. 89-1)
- Plaintiff's September 15, 2011 reply (Doc. Ent. 90)
- PHS defendants' September 16, 2011 sur-reply (Doc. Ent. 92)
- Plaintiff's October 3, 2011 memorandum of law in opposition to the PHS defendants' use of Dr. Kosierowski's affidavit (Doc. Ent. 94)
- PHS defendants' October 5, 2011 supplement (Doc. Ent. 95) & September 9, 2011 Allegiance He
- PHS defendants' October 5, 2011 response (Doc. Ent. 98)
- Plaintiff's October 14, 2011 response (Doc. Ent. 101, Doc. Ent. 102 [Certificate of Service])
- Plaintiff's November 1, 2011 updated status report (Doc. Ent. 111)[6]
- MDOC defendants' November 29, 2011 response (Doc. Ent. 117)
- PHS defendants' November 29, 2011 final supplemental brief (Doc. Ent. 118)
- Defendant Aetna's November 29, 2011 response (Doc. Ent. 119)

---

[5]The PHS defendants' August 30, 2011 motion for a qualified protective order and motion to seal Exhibit B (Doc. Ent. 85) and the PHS defendants' October 5, 2011 motion for a qualified protective order and motion to seal Exhibit A (Doc. Ent. 97) were addressed by my November 21, 2011 order (Doc. Ent. 114). However, on November 30, 2011, the PHS defendants' November 30, 2011 filed an objection (Doc. Ent. 120).

[6]The PHS defendants' November 7, 2011 motion to strike (Doc. Ent. 112) was addressed by my November 21, 2011 order (Doc. Ent. 116).

11

In both the original and amended emergency motions, plaintiff requests that the Court "order the Defendants to schedule Plaintiff to be seen by a qualified liver specialist / oncologist / hepatologist so that he can receive a qualified treatment plan to prevent a more rapid onset of his advanced liver disease[,]" and "further order Defendants to schedule Plaintiff for an appointment to see a liver specialist[.]"  Doc. Ent. 79 at 2, Doc. Ent. 82 at 3.

While plaintiff's August 17, 2011 motion alleged that defendants were not treating plaintiff for his advanced liver disease and mentioned placement on a liver transplant list (Doc. Ent. 79 at 2), his August 29, 2011 amended motion alleges that "Defendants are affording Plaintiff with only a minimal amount of treatment[,]" and that "Plaintiff's present condition can be better evaluated by the liver specialist, and develop a treatment plan that will at least afford the Plaintiff with a chance of surviving this very serious medical condition."  Doc. Ent. 82 at 3.

**b.**     Among the multitude of papers concerning plaintiff's motions for injunctive relief are several attachments.  For example, attached to plaintiff's August 17, 2011 and August 29, 2011 motions are the November 12, 2010 and July 29, 2011 medical reports of Dr. Jerry S. Walden, M.D., F.A.A.F.M.  Doc. Entries 79-2, 79-3, 82-2 & 82-3.  These letters are not notarized; however, the November 12, 2010 letter indicates that Dr. Walden is a physician who is board certified in family medicine.

On the other hand, the PHS defendants have offered the August 23, 2011 affidavit of Adam Edelman, M.D., Corizon Health, Inc.'s Medical Director for Utilization Management for the State of Michigan (Doc. Ent. 83-2)[7] and some of plaintiff's medical records (Doc. Ent. 83-3, Doc. Ent. 84 - SEALED).  Perhaps more importantly, the PHS defendants have presented the

---

[7]Apparently, Corizon Health, Inc. was formerly Prison Health Services, Inc.  Doc. Ent. 83-2.

12

September 2, 2011 affidavit of Richard Kosierowski, M.D. (Doc. Ent. 89-1), described by the PHS defendants as a non-party, "independent consulting oncologist." Doc. Ent. 89 at 2.

To be sure, plaintiff has filed an October 3, 2011 memorandum of law in opposition to the PHS defendants' use of Dr. Kosierowski's affidavit, wherein he claims that (I) the use of Dr. Richard Kosierowski's affidavit to bolster Dr. Edelman's affidavit is a violation of Fed. R. Civ. P. 26(a)(2) ("Disclosure of Expert Testimony."), and (II) Dr. Kosierowski's affidavit was only intended to bolster Dr. Edelman's affidavit, and by doing so has violated Fed. Rules Evid. 701, 702 and 703 because Dr. Kosierowski's affidavit fails to address any subject matter in plaintiff's emergency motion for temporary restraining order and/or preliminary injunction. Doc. Ent. 94.

Still, on October 5, 2011, the PHS defendants filed a supplement wherein they contend that "[n]one of the documents that Plaintiff's counsel refers to in [Doc. Ent. 94] is an expert report." Doc. Ent. 95 at 2. Not only do the PHS defendants claim that Dr. Walden's letters do not meet Fed. R. Civ. P. 26(a)(2)(B)'s criteria for expert reports, but also these defendants explain that the affidavits of Drs. Edelman and Kosierowski "are sworn affidavits for the purpose of providing verified facts and professional opinions to the Court for the purpose of deciding Plaintiff's Emergency Motion for Temporary Restraining Order." Doc. Ent. 95 at 2. Additionally, the PHS defendants provided a copy of the September 9, 2011 Allegiance Health Pathology Report regarding the liver biopsy collected on September 7, 2011 (Doc. Ent. 95-2, Doc. Ent. 96 - SEALED).

**c.** On November 1, 2011, plaintiff provided the Court with an updated status report (Doc. Ent. 111), to which he attached several documents, most of which pre-date the aforementioned liver biopsy pathology report: a CT of abdomen and pelvis with contrast dated June 16, 2011

(Doc. Ent. 111-1 at 2-3 [Allegiance Health, Samir Parikh, M.D.]); a general surgery consultation dated June 16, 2011 (Doc. Ent. 111-1 at 4-6 [Allegiance Health, David Prough, M.D., signed June 18, 2011]); an addendum to surgical consultation performed by Samantha Stokes dated June 16, 2011 (Doc. Ent. 111-1 at 7-8 [Allegiance Health, David Prough, M.D., signed June 18, 2011]); a final progress note/discharge summary dated June 28, 2011 (Doc. Ent. 111-1 at 9-12 [Allegiance Health, Kim Wilson, N.P.]); a history and physical report dated September 7/8, 2011 (Doc. Ent. 111-1 at 13-15 [Allegiance Health, David Prough, M.D.]); an operative report for the September 7, 2011 "[d]iagnostic laparoscopy with biopsy of liver mass and lysis of adhesions[,]" dated September 9, 2011 (Doc. Ent. 111-1 at 16, 19 [Allegiance Health, David Prough, M.D.]); and the September 9, 2011 Pathology Report regarding the liver biopsy collected on September 7, 2011 (Doc. Ent. 111-1 at 17-18 [Allegiance Health, Diane A. Hall, M.D., Ph.D.]).

> Plaintiff's November 1, 2011 requests for relief specifically requests that the Court:
>
> . . . grant his Motion for a Temporary Restraining Order and/or Preliminary Injunction and order the Defendants to schedule Plaintiff to be seen by a qualified liver specialist / oncologist / hepatologist so that he can receive a qualified treatment plan to prevent a more rapid onset of his advanced liver disease, which Defendants are affording Plaintiff with only a minimal amount of treatment at the present time, and further order Defendants to schedule Plaintiff for an appointment to see a liver specialist so Plaintiff's present condition can be better evaluated by the liver specialist, and develop a treatment plan that will at least afford the Plaintiff with a chance of surviving this very serious medical condition.

Doc. Ent. 111 at 9.

**d.**    In the wake of my November 17, 2011 telephonic status conference with counsel for the parties, I entered an order providing that "defendant[s] shall file any further papers regarding plaintiff's August 17, 2011 (Doc. Ent. 79) and August 29, 2011 (Doc. Ent. 82) motions no later than Tuesday, November 29, 2011." Doc. Ent. 115 at 3.

14

On November 29, 2011, the MDOC defendants submitted MDOC Health Care Records dated September 8, 2011, September 9, 2011 and September 13, 2011 (Doc. Entries 117-2 [Dawn M. Lybarger, N.P., unscheduled provider visit], 117-3 [Karen M. Rhodes, D.O., chart update; Haresh B. Pandya, M.D., RMO (Regional Medical Officer) Review] & 117-4 [Nancy McGuire, M.D., chronic care visit]); a MDOC Clinical Progress Note dated October 4, 2011 (Doc. Ent. 117-5 [Richard Miles, M.D.]); MDOC Health Care Records dated October 11/12, 2011 and October 21, 2011 (Doc. Entries 117-6 [Richard Miles, M.D., scheduled provider visit], 117-7 [Richard Miles, M.D., scheduled provider visit]); an MDOC Nurse Protocol dated October 26/27, 2011 (Doc. Ent. 117-8, Brenda S. Upston); an Allegiance Health Discharge Summary dated November 2, 2011 (Doc Ent. 117-9 [Hani Saad, M.D.]); MDOC Physician's Orders dated November 3, 2011 (Doc. Ent. 117-10 [M.K. Lee, R.N. from Dr. Ansari]); a November 9-10, 2011 Medication Administration Record (Doc. Ent. 117-11); MDOC Physician's Orders dated November 3, 2011 (Doc. Ent. 117-12 [M.K. Lee, R.N. from Dr. Ansari]); Consent for Phase I of Corizon CHOICES dated November 9, 2011 (Doc. Ent. 117-13 [signed by patient Kenneth Rhinehart, witnessed by a Registered Nurse; and signed by attending physician Lynn Larson, D.O.]);[8] MDOC Clinical Progress Note regarding a November 18, 2011 IDT Meeting at DWH (Duane Waters Hospital), dated November 21, 2011 (Doc. Ent. 117-15); information from www.vitals.com/doctors regarding gastroenterologists Lynn T. Schachinger, D.O., and Wael I. Youssef, M.D., M.B.A. (Doc. Ent. 117-16);[9] and MDOC Health Care Records dated November

---

[8] The MDOC defendants also provided a copy of Corizon Policy / Procedure. Doc. Ent. 117-14.

[9] According to the MDOC defendants, "[p]laintiff has been treated by two Gastroenterologists at Allegiance Healthcare, Dr. Youssef and Dr. Schachinger, who between them have over 36 years of experience." Doc. Ent. 117 at 7-8.

21, 2011 (Doc. Ent. 117-17 [Janet A. Towne, administrative note]).  *See also* Doc. Ent. 117-1 (Index of Exhibits).

On November 29, 2011, the PHS defendants offered the same-day affidavits of DWH attending physician Lynn Larson, D.O., whose specialty is internal medicine (Doc. Ent. 118-2), and DWH Medical Director Shan Ansari, M.D., whose specialty is internal medicine (Doc. Ent. 118-3).  Doc. Ent. 118-1.  Each of these affidavits similarly states: "The care that the Duane Waters Hospital team [has / and I have] been providing to Mr. Rhinehart is supported by the literature and updated guidelines for all of the medical issues he has experienced as a result of end-stage liver disease, Hepatitis c, and cirrhosis."  Doc. Ent. 118-2 ¶ 19, Doc Ent. 118-3 ¶ 18.

On November 30, 2011, defendant Aetna set forth its arguments that "[p]laintiff has not shown any likelihood of success on the merits, let alone a strong likelihood[,]" "[p]laintiff has not shown irreparable injury[,]" and "[t]he issuance of an injunction would cause harm to others and would not serve the public interest."  Doc. Ent. 119 at 5-8.

**e.**   The Court should deny plaintiff's August 17, 2011 and August 29, 2011 motions for temporary restraining order and/or preliminary injunction (Doc. Entries 79 and 82).

To begin, the parties do not dispute the standard for issuance of a temporary restraining order and/or preliminary injunction.  *See, i.e.*, Doc. Ent. 82 at 9 (plaintiff); Doc. Ent. 83 at 7 (PHS); Doc. Ent. 117 at 7 (MDOC); Doc. Ent. 119 at 4 (Aetna).  "In deciding whether to grant or deny a preliminary injunction, the Court must balance four well-known factors. These factors are:

 1. Whether the plaintiff has shown a strong or substantial likelihood of success on the merits;
 2. Whether the plaintiff has shown irreparable injury;

3. Whether the issuance of a preliminary injunction would cause substantial harm to others; and
4. Whether the public interest would be served by issuing a preliminary injunction.

*Phillips v. Michigan Department of Corrections*, 731 F.Supp. 792, 798 (W.D. Mich. 1990) (citing *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 262 (6th Cir.1988); *Mason County Medical Association v. Knebel*, 563 F.2d 256, 261 (6th Cir.1977)).

In the case at bar, plaintiff's 42 U.S.C. § 1983 claim is based upon alleged deliberate indifference to his serious medical need(s). He also bases his claims on medical malpractice and negligence. Doc. Ent. 1 at 7. As the Sixth Circuit has stated: "It is, of course, black letter law in these eighth amendment cases that negligence or malpractice will not support a section 1983 claim." *Bout v. Michigan Dept. of Corrections*, No. 89-2358, 1991 WL 80685, 2 (6th Cir. May 17, 1991) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 (1976)).

Here, plaintiff has, at best, established a difference of opinion with respect to plaintiff's medical treatment. Perhaps the most persuasive piece of evidence is Dr. Kosierowski's affidavit. Therein, Dr. Kosierowski attests that he is a board-certified oncologist who consults with Corizon Health, Inc.'s Medical Director for Utilization Management for the State of Michigan. Doc. Ent. 89-1 ¶ 2. Among other things, Dr. Kosierowski attests:

> In my professional medical opinion, based upon my professional judgment as a board-certified oncologist, review of the specific medical history and condition of Mr. Rhinehart, MDOC policies, national guidelines and standards, Mr. Rhinehart's medical needs are being met within the [MDOC] and an outside consultation with a liver specialist/oncologist/hepatologist is not needed as a qualified treatment plan is currently in place and open liver biopsy is currently scheduled to further diagnose his condition.

Doc. Ent. 89-1 ¶ 8.

Furthermore, a liver biopsy was performed on September 7, 2011.  *See, i.e.*, Doc. Ent. 95-2, 96 (SEALED), 111-1 at 17-18.  In the pathology report, Dr. Hall made the following diagnoses:

- Moderately active chronic hepatitis consistent with hepatitis C.
- Portal inflammation with mild piecemeal necrosis (inflammatory grade 2).
- Cirrhosis, confirmed on Trichrome stained section (fibrosis stage 4).
- No significant hepatocellular iron on Prussian Blue stained section.
- No findings to correlate with a mass lesion.

Doc. Ent. 96.  Additionally, Dr. Miles's MDOC Clinical Progress Note dated October 4, 2011 specifically states, "[i]nformation received indicated that liver biopsy [was] negative for cancer, positive for cirrhosis."  Doc. Ent. 117-5.

Finally, as the record indicates, plaintiff has received medical attention.  For these reasons, the Court should conclude that plaintiff has not shown a strong or substantial likelihood of success on the merits and is, therefore, not entitled to entry of a temporary restraining order and/or preliminary injunction.

### III.    **NOTICE TO PARTIES REGARDING OBJECTIONS**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.*

*Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE

Dated: December 22, 2011

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: December 22, 2011              s/ Lisa C. Bartlett
                                                           Case Manager