UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID L. RHINEHART and LEWIS
RHINEHART, Joint Personal Representatives
of the Estate of KENNETH A. RHINEHART,
deceased

        Plaintiff,

                                    CASE NO. 2:11-CV-11254-DT
v.                                  JUDGE STEPHEN J. MURPHY, III
                                    MAGISTRATE JUDGE PAUL KOMIVES

DEBRA SCUTT, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION ON: (1) THE CORIZON DEFENDANTS'
MOTION TO DISMISS (docket #181); (2) DEFENDANT AETNA LIFE INSURANCE
COMPANY'S MOTION TO DISMISS (docket #183); and (3) THE MDOC
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (docket #184)**

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Legal Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          1.    *Motion to Dismiss* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          2.    *Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     C.    *Exhaustion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     D.    *Fourteenth Amendment Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          1.    *Due Process* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          2.    *Equal Protection* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
     E.    *Eighth Amendment Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
          1.    *Law of the Case* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
          2.    *Eighth Amendment Medical Claims Generally* . . . . . . . . . . . . . . . . . . . . . . . . 22
          3.    *Corizon Defendants* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
               a.  Corizon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
               b.  Vemuri . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
               c.  Edelman . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
               d.  Stevenson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
          4.    *Aetna* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
               a.  State Actor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
               b.  Policy or Custom . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
          5.    *MDOC Defendants* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
               a.  Scutt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
               b.  Gardon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
               c.  Hamblin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
               d.  Roberge (Clement), Ives, and Potter . . . . . . . . . . . . . . . . . . . . 50
     F.    *State Law Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

G.      Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
III.      NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

\*      \*      \*      \*      \*

I.      <u>RECOMMENDATION</u>: The Court should conclude that: (1) plaintiffs have failed to allege a due process or equal protection claim against any defendant; (2) plaintiffs have failed to allege an Eighth Amendment claim against defendants Corizon, Vemuri, Stevenson, and Aetna; and (3) plaintiffs have failed to establish a genuine issue of material fact with respect to whether the MDOC defendants were deliberately indifferent to his serious medical needs.  However, the Court should conclude that plaintiffs have alleged an Eighth Amendment claim against defendant Edelman. Accordingly, the Court should grant in part and deny in part the Corizon defendants' motion to dismiss, grant Aetna's motion to dismiss, and grant the MDOC defendants' motion for summary judgment.  The Court should also decline to exercise supplemental jurisdiction over plaintiffs' state law claims, and should dismiss these claims without prejudice to plaintiffs refiling them in state court.  If the Court accepts these recommendations, only plaintiffs' Eighth Amendment claim against defendant Edelman will remain pending.

II.      <u>REPORT</u>:

A.      *Background*

Kenneth A. Rhinehart, now deceased, commenced this action on March 29, 2011, by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983.  At the time he filed his complaint, Rhinehart was incarcerated at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan.  Named as defendants are: D. Scutt, Warden at the G. Robert Cotton Correctional Facility; B. Gardon, Health Unit Manager; medical records custodian B. Clement; Nurse Supervisor C. Ives; Registered Nurse K. Hamblin; J. Potter, the official responsible for the managed care of

plaintiff; Prison Health Services (PHS) (now known as Corizon, Inc.), a private corporation that provides health services to prisoners; Drs. V. Stevenson, P. Vemuri, and A. Adleman, PHS employees who provided care to petitioner; and Aetna Life Insurance Company (incorrectly named as Aetna, Inc.). Defendants Scutt, Gardon, Clement, Ives, and Hamblin will be referred to as the "MDOC defendants," and defendants PHS/Corizon, Stevenson, Vemuri, and Adleman will be referred to as the "Corizon defendants."[1] Plaintiff passed away on February 6, 2013. Following the filing of a notice of suggestion of death pursuant to FED. R. CIV. P. 25, David L. Rhinehart and Lewis Rhinehart moved to substitute as parties in their capacity as personal representatives of plaintiff's estate and to file an amended complaint. Their motions were granted on January 15, 2014, and an amended complaint was filed on January 20, 2014. The amended complaint asserts claims against the same defendants named in the original complaint.

Plaintiffs allege generally that defendants were deliberately indifferent to Rhinehart's serious medical needs in violation of the Eighth Amendment. Specifically, plaintiffs contend that defendants failed to appropriately treat Rhinehart's abdominal condition which caused pain and discomfort. Plaintiffs allege that Rhinehart first complained of pain and discomfort on August 9, 2009, while incarcerated at the Alger Maximum Correctional Facility. At that time he was seen by a nurse, who prescribed a laxative and scheduled blood work and a doctor visit. Rhinehart was seen by Dr. Aster Berhane on August 12, who noted a palpable mass 12-14 centimeters in diameter near the epigastric area. Dr. Berhane suspected a cancerous growth. Beginning at this time and continuing through October 2009, Rhinehart received various consultations with Dr. Berhane and

---

[1]Plaintiff previously filed a lawsuit against each of these defendants, except Aetna, raising substantially the same claims. That case, docketed as Case No. 10-10006, was ultimately dismissed based on plaintiff's failure to exhaust his administrative remedies.

with outside doctors. Plaintiff's treating doctors recommended further oncology consultation as well as a liver biopsy. It was eventually determined to transfer Rhinehart to the Cotton Correctional Facility to better serve his medical needs. *See* Amended Compl., ¶¶ 20-34 & Exs. A-L.

Rhinehart arrived at the Cotton Correction Facility on October 27, 2009. Plaintiffs allege that upon his arrival, Rhinehart was not seen by health services within 24 hours, nor within the 14 days required by MDOC Policy Directive 03.04.100. On November 2, he submitted a health services kite complaining of increasing pain in his liver area, but received no response. *See id.*, ¶¶ 35-36 & Exs. M-N. He was scheduled to be seen at health services on November 6, but the appointment was cancelled. *See id.*, ¶ 37. He sent a second kite on November 16, requesting a visit with an oncologist and a liver biopsy, as had been approved while he was incarcerated at the Alger Maximum Correctional Facility. He received no response to this request. *See id.*, ¶ 38 & Ex. O. Plaintiffs allege that Rhinehart also sent a letter to the health care administrator, defendant Gardon, but received no response. *See id.*, ¶ 39 & Ex. P. On December 4, 2009, he filed a grievance about the treatment of his liver fibrosis, the failure of prison officials to perform an intake health screen, and the failure to provide him with an oncology consult or liver biopsy. Rhinehart also asked about a liver transplant, and complained of increasing pain in his liver which was exacerbated by his work assignment. On December 8, defendant Hamblin responded to the grievance, indicating that Rhinehart's request was routine, not urgent, and that an intake health screen first had to be conducted. *See id.*, ¶¶ 40-41 & Exs. Q-R. On December 10, Rhinehart was placed on the health care call-out for an intake screening, but the call-out was cancelled. *See id.*, ¶ 42 & Ex. S. On December 15, defendant Gardon filled out a progress note indicating that Rhinehart had been scheduled twice for an intake screen, but that he was not seen for an unknown reason. *See id.*, ¶ 43

& Ex. T.  On December 30, nurse Joy Ryan filled out an orders summary form indicating that he should be seen by defendant Stevenson by January 5, 2010.  However, Rhinehart did not see Dr. Stevenson.  Rather, on January 4, 2010, he was seen by defendant Vemuri, who ordered lab tests to be done.  *See id.*, ¶¶ 44-45 & Exs. U-V.  On January 7, Rhinehart filed a grievance against defendant Vemuri, complaining that Vemuri had not adequately addressed his pain issues.  The grievance was rejected on January 8 as untimely.  *See id.*, ¶¶ 46-47 & Exs. Q, W.  On January 12, Rhinehart filed formal complaints with both MDOC Chief Medical Officer George Pramstaller and PHS Chief Legal Counsel J. Scott King.  *See id.*, ¶¶ 48-49 & Exs. Y1-Y2.

Plaintiffs allege that Rhinehart "has repeatedly requested to be seen by health services here at Cotton Facility due to his ever increasing severe pain and deteriorating condition of his health and liver. [Rhinehart] has repeatedly kited and expressed concerns about not being scheduled for intake callout, because without that Plaintiff could not be seen by a doctor about his pain or be scheduled for an appointment to be seen by a Hepatologist [sic] or Oncologist for his life threatening condition."  *Id.*, ¶ 50.  On February 22, 2010, "after nearly four (4) months without pain medications and after [Rhinehart] filed [his first] action, pain medication was finally ordered."  However, Rhinehart did not see a liver specialist at that time.  *See id.*, ¶ 51.  On May 12, he saw Doctor Cohen still complaining of severe pain.  Dr. Cohen prescribed methadone, and told Rhinehart that he would see a liver specialist soon.  *See id.*, ¶ 52.  On June 20, he went to healthcare complaining of severe abdominal pain and difficulty breathing.  He was taken to the emergency room at Allegiance Hospital.  While there, he was diagnosed with esophageal varices.  On June 24, he underwent endoscopic surgery to repair the blood vessels in his esophagus.  He was told that the surgery was a temporary fix because the varices could reform.  He was also told that he needed a liver transplant,

because his liver disease would continue to progress. He was discharged from the hospital on June 30. *See id*., ¶¶ 53-58 & Exs. Z-Z2. In November 2010, he hired a medical specialist, Dr. Jerry S. Walden, who reviewed his medical files and wrote a prognosis of his condition. Dr. Walden concluded that Rhinehart suffers from cirrhosis caused by Hepatitis C, a terminal condition, and that the only treatment for his disease is a liver transplant. He also recommended that Rhinehart be considered for a medical commutation, and opined that Rhinehart had received no substantive care for his condition since his transfer to the Cotton facility. *See id*., ¶¶ 61-62 & Ex. Z2.

On June 16, 2011, Rhinehart was taken to Allegiance Medical Hospital with severe abdominal pain and vomiting. The treating physicians noted that his liver disease was worsening, and suggested a follow up MRI of the abdomen in four weeks. They also suggested that, if his condition continued to worsen, Rhinehart should be sent to a tertiary care center for an open biopsy or surgical intervention. *See id*., ¶ 64 & Ex. Z3. On July 29, 2011, Dr. Walden authored a supplemental report, in which he opined that Rhinehart's liver mass had been undiagnosed and untreated for over a year, resulting in continual symptoms of abdominal pain and fatigue, and that plaintiff's abnormal MRI findings were suggestive of a cancerous mass. *See id*., ¶ 65 & Ex. Z2.

At about midnight on October 26, 2011, Rhinehart complained to Correctional Officer May that he was having chest pains. Officer May called health care. According to plaintiffs, an hour later Rhinehart was informed that the nurse would not see him and that he would not be sent to the hospital. *See id*., ¶ 66 & Ex. AA. The following day, at about 11:00 p.m., he was in severe pain and was vomiting blood. Rhinehart's cellmate told a corrections officer, but no one came to check on him. His cellmate again reported the matter to the officer's desk. The officers called health care, and the nurse instructed the officers to have Rhinehart walk to health care to be examined. *See id*.,

¶ 67 & Ex. AA.  He was examined by medical staff about an hour later, and was then taken to Allegiance Medical Hospital, where he was diagnosed with "severe esophageal varices . . . all the way up his entire esophagus," with "active pumping of bleeding of his esophageal varices."  Dr. Lynn Schachinger performed a surgical re-banding of Rhinehart's esophagus, and recommended that plaintiff be "transferred to a tertiary care institution, [so] that a TIPS [Transjugular Intraheptic Portosystem Shunt] procedure . . . could be performed to prevent further bleeding," because further bleeding exposed plaintiff to a significant risk of harm, including death.  *See id*., ¶¶ 68-72 & Exs. BB, CC.  Dr. Schachinger spoke with defendant Edelman about the need for this procedure, but the procedure was rejected by defendant Edelman.  *See id*., ¶¶ 73-74 & Exs. CC, DD.  Rhinehart was discharged to Cotton Correctional Facility on November 2, 2011, where he was treated with morphine and pain medication.  *See id*., ¶ 75.

On January 22, 2013, Rhinehart was admitted to Duane Waters Medical Center after suffering a broken hip.  Upon his admission, Rhinehart displayed severe jaundice and his liver condition had worsened.  *See id*., ¶¶ 76-77 & Exs. EE, FF.  On January 23 and 24, Dr. Paul Kenyon, an orthopaedic surgeon, authored reports opining that surgical repair of Rhinehart's broken hip was severely complicated by his history of esophageal varices, which increased his chance of death due to re-bleeding caused by surgery.  *See id*., ¶ 78 & Ex. EE.  Surgery was ultimately performed, but Rhinehart's condition continued to worsen, and he died on February 6, 2013.  *See id*., ¶ 80 & Ex. GG.  A private autopsy was performed on February 8, 2013, by Dr. Werner Spitz.  Dr. Spitz opined that the cause of Rhinehart's death was "acute morphine intoxication" and that he was essentially killed by an overdose of morphine.  *See id*., ¶¶ 82-83 & Ex. HH.

Plaintiffs' amended complaint, filed on filed on January 20, 2014, alleges five causes of

action.  In Counts I and II, plaintiffs assert under § 1983 claims of violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment and deliberation indifference to plaintiff's serious medical needs in violation of the Eighth Amendment.  In Counts III and IV, plaintiffs assert state law claims of intentional infliction of emotional distress and/or batter, and gross negligence.  In Count V, plaintiffs assert claims of vicarious liability and *respondeat superior* against defendants Corizon and Aetna.  Plaintiff's seek compensatory and punitive damages.  The matter is currently before the court on three dispositive motions filed by defendants:

• On January 29, 2014, the Corizon defendants filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6).  The Corizon defendants argue that they are entitled to dismissal of plaintiffs' Fourteenth Amendment claims because plaintiffs' claims are governed by the Eighth Amendment rather than the Fourteenth Amendment Due Process Clause, and because plaintiff has failed to allege any facts showing that he was deprived of equal protection of the laws.  They further argue that they are entitled to dismissal of plaintiffs' Eighth Amendment claims because plaintiffs have failed to allege that, as to Corizon, the alleged constitutional violations resulted from a policy or custom of Corizon, and as to the individual Corizon defendants, that defendants were deliberately indifferent to plaintiff's serious medical needs.  Finally, the Corizon defendants argue that they are entitled to dismissal of plaintiffs' state law claims because they sound in medical malpractice, and plaintiffs have not complied with Michigan's procedural requirements for bringing a medical malpractice claim.  Plaintiffs filed a response to this motion on March 21, 2014, and the Corizon defendants filed a reply on March 28, 2014.

• Defendant Aetna filed a motion to dismiss on February 10, 2014.  Aetna argues that it is entitled to dismissal of plaintiffs' Fourteenth Amendment and state law claims on the same

grounds argued by the Corizon defendants.  With respect to plaintiffs' Eighth Amendment claims, Aetna argues that it is entitled to dismissal because plaintiffs failed to allege that Aetna acted under color of state law, that Rhinehart's injuries resulted from a policy or custom of Aetna, or that Aetna was deliberately indifferent to Rhinehart's serious medical needs.  Aetna further argues that, if it is deemed to be a state actor subject to suit under § 1983, then plaintiff has failed to exhaust his administrative remedies with respect to Aetna.  Plaintiffs filed a response to this motion on March 21, 2014, and Aetna filed a reply on April 4, 2014.

•      Finally, on February 14, 2014, the MDOC defendants filed a motion for summary judgment pursuant to FED. R. CIV. P. 56.  The MDOC defendants argue that they are entitled to summary judgment because plaintiff failed to exhaust his administrative remedies with respect to them, and because plaintiff cannot show that they were personally involved in the alleged deprivation of his constitutional rights.  Plaintiff filed a response to this motion on March 21, 2014, and the MDOC defendants filed a reply on April 4, 2014.

B.     *Legal Standards*

1.     *Motion to Dismiss*

A motion to dismiss for failure to state a claim upon which relief can be granted is provided for in FED. R. CIV. P. 12(b)(6).  In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that the party asserting the claim can prove no set of facts supporting his claim that would entitle him to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The party asserting the claim is not required to specifically set out the facts upon which he or she bases his claim.  *Id.* at 47.  Rather, "a short and plain statement of the claim" pursuant to FED. R. CIV. P. 8(a)(2) gives the opposing party fair notice of the claim and the grounds upon which it rests. *See*

9

*Conley*, 355 U.S. at 47. However, as the Supreme Court has recently explained, bare legal conclusions need not be accepted by the Court, and a pleading must contain sufficient factual allegations to show that the allegations are plausible:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly* , 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*., at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*., at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.

When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) (parallel citations omitted).

A court can only decide a Rule 12(b)(6) motion on the basis of the pleadings; if the court considers matters outside the pleadings, the court must convert the motion into one for summary judgment under Rule 56.  *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).  For this reason, I have assessed the Corizon defendants' and Aetna's motions to dismiss solely on the basis of the allegations of the complaint, without reference to the evidence that has been submitted by the parties in connection with various briefs in this case.  However, I have not excluded from consideration the medical records and other documents attached to plaintiff's complaint.  Despite the general rule noted above, a court may consider any exhibits attached to the complaint in deciding whether the complaint states a claim upon which relief may be granted.  *See Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (in deciding a motion to dismiss, the court may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."); *Realtek Indus., Inc. v. Nomura Secs.*, 939 F. Supp. 572, 575 n.1 (N.D. Ohio 1996).  This rule extends to the medical records attached to plaintiff's complaint.  *See Tipton v. Corrections Medical Servs., Inc.*, No. 1:08-CV-421, 2009 WL 2135226, at *3 (W.D. Mich. July 15, 2009); *Ellis v. Vadlamudi*, 568 F. Supp. 2d 778, 787 (E.D. Mich. 2008) (Lawson, J., adopting report of Binder, M.J.).

2.    *Summary Judgment*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

11

FED. R. CIV. P. 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue.  As the Supreme Court has explained, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to  return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. (citations omitted);

*see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586-87 (1986).  Thus, "[t]he existence of a mere scintilla of evidence in support of the non-

moving party's position will not be sufficient; there must be evidence on which the jury could

reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.    *Exhaustion*

Pursuant to the Prison Litigation Reform Act (PLRA), inmates challenging their conditions

of confinement must exhaust their administrative remedies before pursuing a federal civil rights

action.  Specifically, the PLRA provides: "No action shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a).  "The PLRA's exhaustion requirement applies to all inmate suits

about prison life, whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  In

order to properly exhaust a civil rights claim, a prisoner must comply with the prison system's

"procedural rules, including deadlines, as a precondition to bringing suit in federal court."

*Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  As the Supreme Court recently explained, the scope of

a prisoner's obligation to exhaust is defined not by the PLRA itself, but by the prison's grievance

procedures:

> [T]o properly exhaust administrative remedies prisoners must complete the
> administrative review process in accordance with the applicable procedural rules,
> rules that are defined not by the PLRA, but by the prison grievance process itself.
> Compliance with prison grievance procedures, therefore, is all that is required by the
> PLRA to "properly exhaust."  The level of detail necessary in a grievance to comply
> with the grievance procedures will vary from system to system and claim to claim,

13

> but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones v. Bock*, 549 U.S. 199, 218 (2007) (citations omitted).

Michigan provides for a three-step grievance procedure. A Step I grievance is directed to the Step I Grievance Coordinator at the facility in which the prisoner is incarcerated. If the prisoner is dissatisfied with the Step I response, she may file a Step II appeal to the Warden of the facility. If the prisoner is again dissatisfied with the Step III response, she may file a Step III appeal to the Director of the Department of Corrections or her designee. *See* MICH. DEP'T OF CORRECTIONS POLICY DIRECTIVE 3.02.130(V), (BB), (FF) (effective July 9, 2007). The Policy Directive provides that a prisoner must include "the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.*, § (R). The MDOC defendants argue that Rhinehart failed to exhaust his administrative remedies with respect to them by appropriately following this grievance procedure. Aetna likewise argues that, to the extent it is a state actor amenable to suit under § 1983, Rhinehart failed to exhaust administrative remedies with respect to it.

Because Rhinehart is now deceased, he is no longer a "prisoner" who is "confined in [a] . . . correctional facility," and thus neither he nor his heirs remain subject to the PLRA exhaustion requirement. *See* 42 U.S.C. § 1997e(a) (emphasis added) ("No action shall be brought . . . *by a prisoner confined in any jail, prison, or other correctional facility* until such administrative remedies as are available are exhausted."); *see also*, *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999); *Mabry v. Freeman*, 489 F. Supp. 2d 782, 785-86 (E.D. Mich. 2007) (Zatkoff, J.) (citing cases). Nevertheless, the Sixth Circuit has held that because the PLRA exhaustion requirement provides that "[n]o action shall be brought" that is unexhausted, a prisoner's release after the suit is filed does not

14

cure his failure to exhaust, and dismissal is still appropriate even though the now-former prisoner may simply refile the suit. *See Cox v. Mayer*, 332 F.3d 422, 424-27 (6th Cir. 2003); *see also*, *Siler v. Baldwin*, No. 08-15077, 2011 WL 6371012, at *3 (E.D. Mich. Dec. 20, 2011) (Duggan, J.). There is no doubt, however, that such a procedure wastes judicial resources, and add unnecessary delay and expense. *See Cox*, 332 F.3d at 428-29 (Moore, J., dissenting); *see also*, *id*. at 425 (majority op.) (recognizing this fact but finding it did not excuse exhaustion because "the statute is unambiguous."); *Murphy v. Magnusson*, No. Civ. 98-439-P-C, 1999 WL 615895, at *3 (D. Me. July 27, 1999). There is, however, a potential way to avoid this waste of judicial resources. Section 1997e provides that, with respect to meritless claims, "the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." 42 U.S.C. § 1997e(c)(2). Because, if the Court were to dismiss plaintiffs' claims on exhaustion grounds plaintiff's could simply refile the claims, it is more economical to first consider whether any of plaintiffs' claims survive dismissal or summary judgment on the merits under § 1997e(c)(2). *Cf. Thaddeus-X v. Wozniak*, No. 99-1720, 2000 WL 712383, at *1 (6th Cir. May 23, 2000) (citations omitted) ("We initially note that Thaddeus-X did not fully exhaust his administrative remedies prior to filing his federal suit, as is required under 42 U.S.C. § 1997e(a). While we would normally remand this case to the district court for dismissal without prejudice, it appears from the record that Thaddeus-X has now fully exhausted his administrative remedies as to the claims in his complaint and that he would be able to re-file his complaint in a timely manner. Since the district court has already addressed the merits of Thaddeus-X's claims, we choose to review the merits of the case at this time, rather than requiring the district court to undertake the redundant exercise of again discussing the merits

upon re-filing of the complaint.").[2]

D.     *Fourteenth Amendment Claims*

In Count I of their amended complaint, plaintiffs' allege that defendants violated both the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment.  The Court should conclude that defendants are entitled to dismissal of these claims.

1.     *Due Process*

To the extent plaintiffs are attempting to assert a due process claim separate and apart from their Eighth Amendment medical care claim, such a claim is without merit.  Where a specific constitutional provision provides the source of a § 1983 plaintiff's claim, "[t]he validity of the claim must . . . be judged by reference to [this] specific constitutional standard," rather than under the Due Process Clause of the Fourteenth Amendment.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  As explained below, plaintiffs' medical care claims are specifically governed by the Eighth Amendment, and thus they may not assert an independent medical care claim under the Due Process Clause.  *See Dodson v. Wilkinson*, 304 Fed. Appx. 434, 438 (6th Cir. 2008); *Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995).  Accordingly, the Court should conclude that all defendants are entitled to dismissal of plaintiffs' Fourteenth Amendment due process claim.

2.     *Equal Protection*

Likewise, defendants are entitled to dismissal of plaintiffs' equal protection claim.  "An equal protection claim must assert that the plaintiff suffered class-based discrimination."  *Herron*

---

[2]As explained below, the Court should conclude that all the defendants, except for defendant Edelman, are entitled to dismissal or summary judgment.  Defendant Edelman does not argue that plaintiffs' claims with respect to him are unexhausted; the Corizon defendants' motion is directed solely at the merits of plaintiffs' claims.  Accordingly, the Court need not further consider the exhaustion issue.

*v. Harrison*, 203 F.3d 410, 416 (6th Cir. 2000) (citing *McClesky v. Kemp*, 481 U.S. 249, 292 (1987)). Thus, "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990). Here, plaintiffs do not allege that Rhinehart was discriminated against on the basis of his membership in a protected class. In their First Amended Complaint, plaintiffs argue that defendants discriminated against Rhinehart as an individual with a disability. *See* First Amended Compl., ¶¶ 112-13. Plaintiffs make the same argument in their responses to defendants' motions. Protected suspect and quasi-suspect classes under the Equal Protection Clause include those based on race, religion, alienage, national origin, ancestry, gender, and illegitimacy. *See Owens v. Ventura County Super. Ct.*, 42 F. Supp. 2d 993, 998 (C.D. Cal. 1999). Disability status, however, is not a protected suspect or quasi-suspect class under the Equal Protection Clause. *See S.S. v. Eastern Ky. Univ.*, 532 F.3d 445, 457 (6th Cir. 2008). Nor do plaintiff's provide any allegations to show how Rhinehart was discriminated against *because of* his alleged disability. To be sure, plaintiffs' complaint is replete with allegations that defendants failed to provide appropriate care for Rhinehart's medical conditions. However, to succeed on an equal protection claim plaintiffs must allege and prove that a "discriminatory intent or purpose was a factor in the decision of the prison officials." *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995) (citing *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265-66 (1977); *see also*, *Wilson v. Collins*, 517 F.3d 421, 432 (6th Cir. 2008). Plaintiffs do not allege that defendants failed to treat Rhinehart's medical condition because of his disability. On the contrary, plaintiffs repeatedly characterize defendants' motivation in failing to treat plaintiff as a desire to save money. Because plaintiffs' do not allege any facts to

show that Rhinehart was discriminated against by defendants because of his membership in a constitutionally protected class, defendants are entitled to dismissal of plaintiffs' equal protection claims.

E.     *Eighth Amendment Claims*

The crux of plaintiffs' complaint is their medical care claims under the Eighth Amendment. With respect to these claims, the Court should conclude that plaintiffs have failed to state a claim for relief with respect to defendants Corizon, Vemuri, Stevenson, and Aetna. However, the Court should conclude that plaintiffs have stated a claim with respect to defendant Edelman. The Court should also conclude that plaintiffs' have failed to raise a genuine issue of material fact with respect to their Eighth Amendment claims against the MDOC defendants.

1.     *Law of the Case*

As an initial matter, the Corizon defendants argue that the Sixth Circuit's decision on plaintiffs' appeal from the Court's denial of a preliminary injunction establishes that plaintiffs have failed to state a claim of deliberate indifference under the Eighth Amendment. The Court should reject this argument. "'Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court in the same case.' The law of the case doctrine precludes reconsideration of issues that have been, either explicitly or by necessary implication, affirmatively decided during a prior appeal." *United States v. One Tract of Real Property*, 104 Fed. Appx. 467, 468 (6th Cir. 2004) (citation omitted) (quoting *Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1150 (6th Cir. 1998)). "However, a trial court is free on remand to consider any issues not decided by the appellate court." *Richard v. Ray*, 76 Fed. Appx. 669, 670 (6th Cir. 2003) (citing *Kavorkian v. CSX Transp., Inc.*, 117 F.3d 953, 959 (6th Cir. 1997)). The

Court should conclude that the Sixth Circuit did not necessarily decide that plaintiffs' complaint failed to state a deliberate indifference claim under Rule 12(b)(6), and that the law of the case doctrine is therefore inapplicable.

The issue of whether plaintiffs' complaint stated a claim was not before the Sixth Circuit. The appeal in that case involved this Court's denial of a preliminary injunction. In analyzing whether Rhinehart was entitled to a preliminary injunction requiring prison officials to allow him to see a liver specialist, the Sixth Circuit addressed the four factors relevant to determining whether injunctive relief is appropriate: (1) the likelihood of success on the merits; (2) the existence of irreparable harm in the absence of an injunction; (3) the balance of the equities between the parties; and (4) the public interest. *See Rhinehart v. Scutt*, 509 Fed. Appx. 510, 513 (6th Cir. 2013) (citing *Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). As to the first issue, the Sixth Circuit held that "Rhinehart has not shown that he is likely to succeed on the merits," *id.*, reasoning:

> [Rhinehart's] underlying claim is that the prison officials have been deliberately indifferent to his medical needs. Such a claim requires him to show both that the "alleged mistreatment was objectively serious," and that the officials "subjectively ignored the risk to the inmate's safety." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir.2011). As the district court noted, "[c]laims of deliberate indifference to medical needs are difficult to prove." *Rhinehart*, 2012 WL 175420, at *3.
>
> Neither negligence alone, nor a disagreement over the wisdom or correctness of a medical judgment is sufficient for the purpose of a deliberate indifference claim. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). In this case, the district court found-and we agree-that Rhinehart has not alleged more than a difference of opinion with respect to his medical treatment, and as a general rule, where a plaintiff has received care, he will not be able to sustain a claim of deliberate indifference. *See Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir.1976). He alleged significant physical pain, and while the district court was appropriately sympathetic, there was no evidence presented that this pain was being caused deliberately by the prison staff, or was being caused by their neglect. While it is possible for the care in a prison to be so "grossly

19

inadequate" as to constitute deliberate indifference, *see Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843-44 (6th Cir. 2002), the magistrate and district court's findings suggest very strongly that this was not the case here. Instead, the district court found that the treatment offered by the defendants is consistent with his conditions. In addition, defendants detail a long history of treatment, consistent with medical protocols, and substantiated by the record. *See, e.g.*, Br. for Def.-Appellees Debra Scutt, 9-12. Courts are hesitant to second-guess professional judgments exercised by medical professionals. *See, e.g., Youngberg v. Romeo*, 457 U.S. 307, 321-23. The treatment provided to Rhinehart does not clearly suggest cruel and unusual punishment.

*Id.* at 513-14. The Corizon defendants argue that this analysis necessarily determined that plaintiffs' have failed to state a deliberate indifference claim. The Court should disagree.

Under Rule 12(b)(6), a plaintiff need only state a plausible claim for relief. To obtain a preliminary injunction, however, a plaintiff must go further and establish a likelihood of succeeding on his claim. The failure to do the latter does not necessarily imply that the plaintiff has failed to state a claim. "[T]he standard for obtaining injunctive relief is considerably higher than the standard for surviving dismissal." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 778 (D.N.J. 2013); *cf. Allstate Ins. Co. v. Warns*, No. CCB-11-1846, 2012 WL 681792, at *14 (D. Md. Feb. 29, 2002) (finding that although the plaintiff "has alleged sufficient facts to survive a 12(b)(6) motion to dismiss, it is inappropriate on the current record" to grant a preliminary injunction). Thus, as the D.C. Circuit has explained,

> "[T]he decision of a trial or appellate court whether to grant or deny a preliminary injunction does not constitute law of the case for the purpose of further proceedings and does not limit or preclude the parties from litigating the merits." *Berrigan v. Sigler*, 499 F.2d 514, 518 (D.C. Cir. 1974); *see also Belbacha v. Bush*, 520 F.3d 452, 458 (D.C. Cir. 2008). . . .
>
> The generally recognized precedent for the preliminary injunction exception to the law-of-the-case doctrine arises from the nature of a preliminary injunction. That equitable remedy is a stopgap measure, generally limited as to time, and intended to maintain a status quo or "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). In trial court, this would mean that a determination had been made

without discovery or the other full range of exploratory and preparatory pretrial procedures and without a full trial on the merits. In appellate review, the court of appeals must often consider such preliminary relief without the benefit of a fully developed record and often on briefing and argument abbreviated or eliminated by time considerations. *See, e.g., Cohen v. Brown Univ.*, 101 F.3d 155, 169 (1st Cir. 1996). Thus arose the exception to the law-of-the-case doctrine. An appellate court in a later phase of the litigation with a fully developed record, full briefing and argument, and fully developed consideration of the issue need not bind itself to the time-pressured decision it earlier made on a less adequate record.

Furthermore, independent of the preliminary-injunction exception, a decision in the preliminary-injunction context may fail to garner law-of-the-case effect simply because it fails to satisfy an element of the law-of-the-case rule itself: the requirement that a court must "affirmatively decide[]" an issue, explicitly or by necessary implication, to establish law of the case. *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995). The standard for granting a preliminary injunction essentially asks-in part-whether a plaintiff is "likely to succeed on the merits" of his claim. *See, e.g., Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). To the extent an appellate court predicts, without making a definitive legal conclusion, that the plaintiffs *probably* or *likely* will or will not succeed on the merits, it cannot be said that the court "affirmatively decided" the issue such that it would bind an appellate court at a later stage of the litigation.

*Sherley v. Sebelius*, 689 F.3d 776, 781-82 (D.C. Cir. 2012); *see also, Southern Ore. Barter Fair v. Jackson County, Ore.*, 372 F.3d 1128, 1136 (9th Cir. 2004) (citations and internal quotation omitted) ("Decisions on preliminary injunctions require the district court to assess the plaintiff's likelihood of success on the merits, not whether the plaintiff has actually succeeded on the merits. Additionally, decisions on preliminary injunctions are just that–preliminary–and must often be made hastily and on less than a full record.  Thus . . . the general rule [is] that decisions on preliminary injunctions are not binding at trial on the merits, and do not constitute the law of the case."); *Grudzinski v. Staren*, 87 Fed. Appx. 508, 512 (6th Cir. 2004) (citing *Wilcox v. United States*, 888 F.2d 1111, 1114 (6th Cir. 1989)) ("Findings made in the course of deciding whether to issue a preliminary injunction, however, generally do not establish the law of the case[.]")

This exception does not apply where the earlier ruling definitively resolved an issue "in a

definitive, fully considered legal decision based on a fully developed factual record." *Sherley*, 689
F.3d at 782. But here the Sixth Circuit did not definitively resolve, either expressly or by necessary
implication, whether plaintiffs' complaint stated a claim under Rule 12(b)(6). The Sixth Circuit was
not asked to, and did not, address whether Rhinehart had stated a claim under Rule 12(b)(6). It is
true that the court *suggested* that he had not in assessing the likelihood of success factor, but it did
not definitively rule on this matter. For example, the Sixth Circuit found that "Rhinehart has not
alleged more than a difference of opinion with respect to his medical treatment, and *as a general
rule*, where a plaintiff has received care, he will not be able to sustain a claim of deliberate
indifference." *Rhinehart*, 509 Fed. Appx. at 513-14 (emphasis added). The court noted, however,
that this general rule does not always hold, and that "it is possible for the care in prison to be so
grossly inadequate as to constitute deliberate indifference." *Id*. at 514 (internal quotation omitted).
The Sixth Circuit went no further than to say that the record before the court "very strongly *suggests*
that this was not the case here," and that the record "does not clearly *suggest* cruel and unusual
punishment," *id*. (emphasis added), indicating that the court was merely making a tentative
assessment for purposes of the preliminary injunction test. Further, it is clear that the court's
determination was based not on the sufficiency of the allegations in the complaint, but on the
"evidence presented." *Id*. In these circumstances, the Sixth Circuit did not, either expressly or by
necessary implication, determine that plaintiffs' complaint failed to state a claim for relief under
Rule 12(b)(6).

2.   *Eighth Amendment Medical Claims Generally*

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right,
privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2)

22

the deprivation was caused by a person while acting under color of state law. *See Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective

test.  *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991).  Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation.  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).  The plaintiff bears the burden of proving these elements by a preponderance of the evidence.  *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection.  *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981).  To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349.  The objective component is contextually driven and is responsive to "'contemporary standards of decency.'"  *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).  The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton."  *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).  In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard.  *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06.  Under this "deliberate indifference" standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.  A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate.  *See id.* at 843-44.  However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances.  *See id.* at 844-45.  In

24

short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)); *accord Farmer*, 511 U.S. at 836 (equating "deliberate indifference" to the "recklessness" standard under criminal law); *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992) (quoting *McGill v. Duckworth*, 941 F.2d 344, 348 (7th Cir. 1991)) (citations omitted) ("'Deliberate indifference' means *recklessness* in a criminal, subjective sense:  disregarding a risk of danger so substantial that knowledge of the danger can be inferred.  Such disregard is tantamount to intending that the injury occur.").

Plaintiffs' claims that defendants denied medically necessary treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*.  In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105.  Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).  However, mere conflicts between a prisoner and his medical providers over the proper course of treatment fail to state an Eighth Amendment claim of deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 107; *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir.1976).  As the Supreme Court made clear in *Estelle*, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical

25

mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.  "[A]n inadvertent failure to provide adequate medical care (such as medical malpractice) cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 107.  In the medical context, therefore, mere negligence, or even gross negligence, is insufficient to establish an Eighth Amendment violation.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860-61 n.5 (6th Cir. 1976).  Thus, allegations of "an inadvertent failure to provide medical care . . . [or of] negligen[ce] in diagnosing or treating a medical  condition do[] not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 105-06; *see also*, *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. Aug. 4, 1999) (en banc).

Moreover, it is well established that liability in a § 1983 action cannot be based on a theory of *respondeat superior*.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the

26

deprivation of his civil rights.  Liability under § 1983 must be based on the personal involvement

of the defendant."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see*

*also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v.*

*University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).

There is no question, and defendants do not argue to the contrary, that Rhinehart's conditions

constituted serious medical needs.  Thus, the only question, to which I now turn, is whether plaintiffs

have adequately alleged that each defendant demonstrated deliberate indifference to Rhinehart's

serious medical needs.[3]

_____

[3]I note that this inquiry is complicated by the fact that plaintiffs' First Amended Complaint, in large part, does not assert allegations against each specific defendant, but mostly alleges that "defendants" in general did or did not do certain things.  At times, plaintiffs appear to argue that each defendant can be found to have acted with deliberate indifference because the combined effect of defendants' actions as a whole amounted to deliberate indifference.  *See, e.g.*, Pl.s' Resp. to Corizon Def.s' Mot. to Dismiss, at 33 ("The facts alleged by Plaintiffs . . . describe in detail the collective indifference of all Defendants to Rhinehart's serious and well-known medical condition, and the Defendants' collective failure to provide any care or treatment despite repeated complaints.").  Indeed, plaintiffs explicitly argue that they are "not required to allege in [their] First Amended Complaint, and specify in detail, the level of involvement of each and every . . . Defendant in the denial of [Rhinehart's] pain medication and medical treatment."  Pl.s' Resp. to MDOC Def.s' Mot. for Summ. J., at 35.  In support of this argument, plaintiffs cite to *Flanory v. Bonn*, 604 F.3d 249 (6th Cir. 2010), but that case does not support plaintiffs' assertion.  The *Flanory* court merely held that the allegations in that case that each defendant was aware of, and failed to correct, the denial of indigent status to the plaintiff that resulted in his inability to get toothpaste was sufficient to survive summary judgment.  Nothing in that decision suggests that a plaintiff need not provide sufficient allegations with respect to each defendant's role in order to survive dismissal or summary judgment.

On the contrary, it is well established that "because the deliberate indifference standard focuses on the mental state of the prison official, plaintiff may not aggregate the acts of the individual defendants to establish that, collectively, they were deliberately indifferent to his medical needs."  *Hann v. Michigan*, No. 05-CV-71347, 2010 WL 1006206, at *6 (Feb. 25, 2010) (Komives, J.), *magistrate judge's report and recommendation adopted*, 2010 WL 1002611 (E.D. Mich. Mar. 16, 2010) (Borman, J.) (citing *Rouse v. Plantier*, 182 F.3d 192, 200 (3d Cir. 1999); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999)); *see also*, *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) ("Each individual must be judged separately and on the basis of what that person knows."); *Stewart*, 174 F.3d at 537 ("[E]ach defendant's subjective deliberate indifference, *vel non*, must be examined separately.").  Indeed, "[c]onclusorily asserting that a laundry-list of individuals committed a number of wrongful acts, without specifying each individual's particular conduct, does not state a claim pursuant to 42 U.S.C. § 1983."  *Coleman v. Gullet*, No. 12-

27

3.    *Corizon Defendants*

*a. Corizon*

As noted above, and contrary to much of plaintiffs' argument, defendant Corizon may not be held liable simply because its employees may have acted with deliberate indifference to Rhinehart's serious medical needs.   As the Court explained in *Iqbal*, there is no vicarious or *respondeat superior* liability under § 1983.  *See Iqbal*, 556 U.S. at 676.  Thus, for example, in the context of a municipality, a plaintiff cannot establish the municipality's liability unless he shows that "deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 415 (1997).  In the context of a claim against a municipality, a plaintiff therefore must establish both (1) an underlying violation of his constitutional rights, and (2) that the violation resulted from the municipality's own deliberately indifferent policies.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (explaining that "proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation.");  *City of Los Angeles v. Heller*, 475 U.S.

---

10099, 2013 WL 4026839, at *8 (Aug. 6, 2013) (Michelson, M.J.), *magistrate judge's report adopted*, 2013 WL 5172306 (E.D. Mich. Sept. 13, 2013) (Goldsmith, J.) (citing *Marcilis v. Township of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (finding that complaint failed to state a *Bivens* claim against two federal agents because it referred to all defendants categorically and did not identify the personal involvement of the two agents); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants,' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional act they are alleged to have committed."); *Miller v. City of Detroit*, No. 12-10186, 2013 WL 2446129, at *3 (E.D. Mich. June 5, 2013) (Friedman, J.) ("[As in *Marcilis*], the complaint consists almost entirely of generalized allegations against 'defendants' collectively, as opposed to specific allegations as to 'what each defendant did to violate the asserted constitutional right.' "); *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")).

28

796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of unconstitutionally excessive force is quite beside the point.").  This rule of municipal liability applies equally to private corporations that are deemed state actors for purposes of § 1983.  *See Street v. Corrections Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1996); *see also*, *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (citing cases); *Dashley v. Correctional Med. Servs., Inc.*, 345 F. Supp. 1018, 1021 (E.D. Mo. 2004).  Thus, Corizon "although clearly a state actor and therefore a proper party to this § 1983 action, cannot be held vicariously liable for the actions of its agents . . . .  Hence, [Corizon's] liability must . . . be premised on some policy that caused a deprivation of [plaintiff]'s Eighth Amendment rights." *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir. Mar. 26, 2001).  To establish that the alleged constitutional violations resulted from Corizon's illegal policy or custom, there are "four avenues [plaintiffs] may take." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  Specifically, plaintiffs "can look to (1) [Corizon's] . . . official . . . policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id*.  However, plaintiffs "bear[] a heavy burden in proving [Corizon's] liability, and [they] cannot rely on a single instance to infer a policy of deliberate indifference." *Id*. at 433.

Plaintiffs make generalized allegations that Corizon is liable for the acts of its employees "given its tacit understanding of the conduct of its agents, as well as its policies, practices, and customs." First Amended Compl., ¶¶ 106; *see also*, *id*., ¶ 109 ("Defendants' policies, practices, acts, and omissions placed Plaintiff, Kenneth A. Rhinehart, at an unreasonable and foreseeable risk of

medical injury."); ¶ 111 ("Defendants implemented, sanctioned, approved, ratified, or failed to remedy policies, practices, acts and omissions that denied, delayed or intentionally intererefed with Plaintiff's health and safety."); ¶ 112 ("Defendants . . . authorized, tolerated, ratified, permitted or acquiesced in the creation of policies, practices, and customs, establishing a de facto policy of deliberate indifference to individuals such as Plaintiff, Kenneth A. Rhinehart."); ¶ 117 ("Defendants' policies, practices, acts and omissions placed Plaintiff at an unreasonable and foreseeable risk of serious medical injury and harm."); ¶¶ 126-27 ("Defendants, . . . knowing of the medical needs of Plaintiff, and knowing also of the inadequacies and deficiencies in the medical facilities[,] staffing and procedures at JCF. had a duty . . . to establish and implement policies, practices and procedures designed to assure that Plaintiff received [adequate] medical care and treatment," and "with deliberate indifference to the[se ] inadequacies and deficiencies . . . failed and neglected to establish and implement policies, practices and procedures designed to assure that Plaintiff receive medical treatment and care . . . ."); ¶¶ 128-29 ("Defendants, . . . knowing of the medical needs of Plaintiff have a duty . . . to instruct, supervise and train their employees and agents to assure the delivery of medical care to plaintiff" and "with deliberate indifference to such needs, have failed to instruct, supervise and train their employees and agents . . . ."); ¶ 137 ("Defendants breached their duties by . . . [f]ailing to supervise . . . [and] [f]ail[ing] to maintain proper customs and policies."); ¶ 145 ("At all times, [the individual defendants] were employees of . . . Corizon . . . and as such . . . Corizon . . . [is] liable for those acts of [its] employees . . . due to its policies, practices and customs."); ¶ 146 (Corizon is liable because "there is a direct causal link between the policies and/or customs of [Corizon] and the violation of Plaintiff's constitutional rights which occurred.").

These general allegations are insufficient to state a claim against defendant Corizon.  Under

*Iqbal*, generalized allegations that actions were taken pursuant to a policy or custom, "'devoid of further factual enhancement,'" do not state a claim for relief.  *Raymond v. O'Connor*, 526 Fed. Appx. 526, 530 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678); *see also*, *Sanchez ex rel. D.R.-S. v. United States*, 671 F.3d 86, 99 (1st Cir. 2012); *Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011).  Plaintiffs' complaint contains "no allegation of a *specific* policy implemented by the Defendants . . . that led to" the alleged unconstitutional conduct.  *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012); *see also*, *Maxwell v. Correctional Med. Servs., Inc.*, 538 Fed. Appx. 682, 692 (6th Cir. 2013) (internal quotation omitted) (plaintiff's "conclusory allegations that CMS and PHS policies caused the violation of his constitutional right does not state a claim to relief that is plausible on its face."); *Wooten v. Spigner*, No. 2:11-CV-11479, 2011 WL 5075692, at *4 (Sept. 8, 2011) (Komives, M.J.) ("[T]he complaint does not allege any specific policies, practices, or customs which amounted to deliberate indifference or actually caused the alleged constitutional violations on the part of the individual officers."), *magistrate judge's report adopted*, 2011 WL 5075713 (E.D. Mich. Oct. 25, 2011) (Cohn, J.); *Velez v. Michigan Dep't of Corrections*, No. 09-10519, 2010 WL 1254852, at *2 (E.D. Mich. Mar. 28, 2010) (Hood, J.); *Sanchez-Orozco v. Livonia Police Dep't*, No. 2:08-CV-14297, 2009 WL 2922041, at *3 (E.D. Mich. Sept. 8, 2009) (Murphy, J.) (rejecting the plaintiffs' argument "that they are not required to name a specific policy" at the motion to dismiss stage, and concluding that because the plaintiffs "failed to identify a specific custom or policy that caused the claimed constitutional violations" they "failed to state a claim for municipal liability."). In the absence of any allegations connecting the denial of medical care to specific policies or customs of Corizon, Corizon is entitled to dismissal.

Plaintiffs argue that their allegations are sufficient to establish Corizon's liability because

they have alleged that the actions were taken by Corizon officials with final decision-making authority, that there is a policy of inadequate training or supervision, and that there is a recurring pattern that gives rise to the inference that Corizon has a custom of tolerance for federal civil rights violations. Each of these arguments is without merit. As to decision-making authority, plaintiffs' amended complaint does not allege that any of the individual defendants had final decision-making authority with respect to the policies of Corizon. To the extent plaintiff's are arguing that the individual Corizon defendants had the final decision-making authority with respect to the treatment Rhinehart would or would not receive, this is not the type of decision-making authority that gives rise to liability under *Monell*. *Monell* liability may be established by the act of a single official "where the decisionmaker possesses final authority to establish . . . *policy* with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (emphasis added). Here, although plaintiffs' complaint could be read as alleging that the individual defendants had authority to make medical treatment decisions, there is no allegation that any of the individual defendants had final authority to establish Corizon policy regarding medical treatment. *See Camp v. Correctional Medical Servs., Inc.*, 668 F. Supp. 2d 1338, 1352 (M.D. Ala. 2009) ("While Plaintiffs allege that Linton had authority in making hiring decision, they do not allege that he had authority to determine *policy* with respect to these hiring decisions. *Monell* liability is predicated on the latter."); *cf. Maxwell v. Correctional Med. Servs., Inc.*, 538 Fed. Appx. 682, 692 (6th Cir. 2013) (internal quotation omitted) (official of private health contractor was not policymaker where he had discretion whether to refuse treatment for preexisting condition but there was no allegation that he "was responsible for establishing final corporate policy respecting such activity."). Nor have plaintiffs adequately alleged a plausible claim against Corizon based on a failure to train. Plaintiffs do not

allege in what respect the individual defendants' training was inadequate, or how this inadequate training was deliberately indifferent to Rhinehart's constitutional rights. "[P]laintiff[s'] boilerplate allegation that [Corizon[ failed to trian and supervise its [medical personnel] . . . is insufficient to sustain the action."  *Fanelli v. Town of Harrison*, 46 F. Supp. 2d 254, 259 (S.D.N.Y. 1999).

Finally, plaintiffs have not adequately alleged that Corizon has a custom of acquiescing to federal civil rights violations on the part of its employees.  Plaintiffs have alleged no facts in their First Amended Complaint which suggest such a custom.  In their response to the Corizon defendants' motion to dismiss, plaintiff's argue that "Corizon provides prisoner health care services to multiple states throughout the United States, and as of October 2013 it was reported that *Corizon has been sued over 660 times in the last 5 years* by prisoners for complaints of failure to provide proper medical care and treatment, and approximately 25% of these suits ended in confidential settlement agreements."  Pl.s' Resp. to Corizon Defs.' Mot. to Dismiss, at 28 n.7 (emphasis in original).  Even assuming that these numbers are both accurate and proper subjects for consideration on a motion to dismiss, *see L.L. ex rel. Lemus v. Baltimore City Policy Dep't*, No. WDQ-12-3025, 2013 WL 1833249, at *2 (D. Md. Apr. 30, 2013) ("L.L. also attempts to show custom by describing a [newspaper article concerning prior lawsuits].  Regardless of the truth of this article and its applicability to this case, the complaint has no allegations about these facts, and consideration of the article is outside the scope of a motion to dismiss."); *Ezagui v. City of New York*, 726 F. Supp. 2d 275, 284 (S.D.N.Y. 2010) ("That this issue may have been raised in other cases does not cure the facial inadequacy in Plaintiff's Complaint."), they do nothing to establish that Corizon had a policy or custom of ignoring constitutional violations.  Plaintiffs provide no information regarding the actual claims raised in these cases or their merit.  "[T]he mere fact that a number of lawsuits have

33

been filed, without any information as to whether the suits are meritorious or spurious, or alternatively, any evidence that the [defendant] ignored such complaints such that it constituted deliberate indifference to any potential problem of [unconstitutional conduct], does not assist a fact-finder in determining whether the [defendant] . . . actually has a historical problem of its" employees committing constitutional violations. *Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 345-46 (E.D.N.Y. 2006); *see also*, *Jean-Laurent v. Wilkerson*, 461 Fed. Appx. 18, 22-23 (2d Cir. 2012) ("Jean-Laurent's citation to various lawsuits involving inmate claims for the excessive use of force is not probative of the existence of an underlying policy that could be relevant here."); *Jones v. City of New York*, No. 12-CV-3658, 2013 WL 6047567, at *13 (E.D.N.Y. Nov. 14, 2013) ("[T]he existence of other lawsuits against the City alleging similar violations of constitutional rights . . . does not establish a policy or custom as necessary under *Monell*."); *Dillard v. Gregory*, No. 11-cv-01928, 2012 WL 5056932, at *9 (D. Colo. Oct. 18, 2012) (evidence of large number of lawsuits filed against city insufficient to establish policy or custom); *Gray v. City of Hammond, Ind.*, 693 F. Supp. 2d 823, 834-35 (N.D. Ind. 2010) (evidence of other lawsuits, without more, insufficient to establish municipal policy); *cf. Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) ("[T]he mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force."); *Merman v. City of Camden*, 824 F. Supp. 581, 591 (D.N.J. 2010) (isolated statistics regarding number of excessive force complaints filed, without context as to how the misconduct in those cases was similar to the case at bar, do not justify a finding of a municipal policy or custom).

Nor does the existence of cases which ended in settlements do anything to establish the existence of a Corizon policy or custom of ignoring or acquiescing in constitutional violations. "The

considerations leading to a settlement are many and varied; at times they have little to do with the basic facts of a case. [Such] cases, therefore, cannot be used to prove custom or practice." *Kinan v. City of Brockton*, 876 F.2d 1029, 1034 (1st Cir. 1989); *see also*, *Gutierrez v. City of New York*, 756 F. Supp. 2d 491, 514 (S.D.N.Y. 2010) (in suit brought by Hispanic officers alleging a policy of discrimination, settlement of prior lawsuit did not establish policy where no "language in the Settlement . . . supports finding a policy of discrimination" and settlement expressly denied all liability). *See generally*, FED. R. EVID. 408, advisory committee note, 1972 proposed rule (noting that offers of settlement lack probative value because "the offer may be motivated by a desire for peace rather than from any concession of weakness of position."); 4 JOHN H. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1061, at 36 (James H. Chadbourne rev. ed. 1972) (evidence of settlement or attempts to settle are not necessarily probative of a claim's validity; often such an offer "implies merely a desire for peace, not a concession of wrong done.").[4]  Accordingly, the Court should conclude that plaintiffs have failed to state policy or custom claims against Corizon, and should dismiss plaintiff's claims against Corizon.

### b. Vemuri

With respect to defendant Vemuri, plaintiffs allege only that she examined Rhinehart on January 4, 2010, at the request of defendant Stevenson, who was Rhinehart's primary physician. Dr. Vemuri examined plaintiff, noted plaintiff's subjective complaints and her objective findings, ordered various laboratory tests, and called for a treatment plan of referral to an oncologist. *See* First Amended Compl., ¶ 45 & Ex. V.  Plaintiffs do not allege that defendant Vemuri had any other

---

[4]Moreover, evidence of Corizon's settlements to prove their liability on a *Monell* claim is barred by Federal Rule of Evidence 408. *See* FED. R. EVID. 408; *Green v. Baca*, 226 F.R.D. 624, 641 (C.D. Cal. 2005).

role in plaintiff's medical care beyond this one examination. And the allegations relating to this one

visit are insufficient to raise a plausible claim that defendant Vemuri was deliberately indifferent to

Rhinehart's serious medical needs. As alleged by plaintiffs, Vemuri had a very limited role in

Rhinehart's treatment, and nothing in plaintiffs' allegations suggest that Vemuri acted

inappropriately in her limited role. Upon her examination of plaintiff, she devised a treatment plan

which included lab tests and follow-up visits with Rhinehart's medical provider and an oncologist.

Even if Dr. Vemuri should have done more, these facts do not raise a plausible claim that Dr.

Vemuri was, in a subjective sense, deliberately indifferent to Rhinehart's condition. *See Portillo*

*v. Johnson*, 94 Fed. Appx. 457, 458 (9th Cir. 2004) (no deliberate indifference by doctor who

examined plaintiff only once and ordered further x-rays and a urine test, but denied inmate's

requests for referral to a urologist and for pain medication; "[t]aking as true the allegations in the

complaint, . . . [the doctor's] conduct might rise to the level of negligence, even gross negligence,

but it does not amount to deliberate indifference to a serious medical condition."); *Kelly v. Ghosh*,

No. 11 C 1283, 2013 WL 773012, at *7 (N.D. Ill. Feb. 27, 2013) (no deliberate indifference on part

of physician assistant who examined plaintiff only once, where defendant examined him, prescribed

pain medication, and scheduled him for a follow-up x-ray; even if the defendant "provided

inadequate treatment or should have done more, her actions . . . at most amounted to negligence, but

not deliberate indifference."); *Boyd v. Habeck*, No. 11-CV-609, 2013 WL 518966, at *4 (E.D. Wis.

Feb. 12, 2013) (no deliberate indifference where "Boyd visited Dr. Wolk one time; Dr. Wolk

examined him and provided a recommendation based on that exam."); *Falconer v. Pierce*, No. 10-

1236, 2012 WL 1080655, at *3 (C.D. Ill. Mar. 30, 2012) (no deliberate indifference where doctor

treated plaintiff only one time, examined him, and scheduled him for follow-up examination);

*Craver v. Roche*, No. S-06-0362, 2008 WL 4158933, at *1 (E.D. Cal. Sept. 4, 2008) ("Neither Dr. O. Roche, who examined plaintiff only once, nor Dr. S.M. Roche, who examined plaintiff only once, were plaintiff's primary physician. Their knowledge of plaintiff's condition cannot be expected to be as thorough as a true primary physician's might be and, since, the facts reveal that neither defendant deliberately disregarded a risk of harm to plaintiff, this Court finds that neither was deliberately indifferent toward plaintiff's medical condition."), *aff'd*, 328 Fed. Appx. 556 (9th Cir. 2009). Accordingly, the Court should grant the Corizon defendants' motion to dismiss with respect to plaintiffs' claims against defendant Vemuri.

### c. Edelman

However, the Court should conclude that plaintiffs have stated a plausible claim for relief with respect to defendant Edelman. Plaintiffs allege that Dr. Berhane discussed Rhinehart's medical condition with defendant Edelman, including his need to be transferred to JCF for expedited follow-up regarding Rhinehart's liver mass. *See* First Amended Compl., ¶ 30 & Ex. J. Despite this, plaintiffs allege, defendant Edelman did not ensure that plaintiff was seen by a specialist until nine months later, when he was rushed to the emergency room. More significantly, plaintiffs allege that in October 2011, Dr. Schachinger, Rhinehart's treating specialist at Allegiance Hospital, recommended that Rhinehart should be transferred to a tertiary care institution for a TIPS procedure, and that the failure to do this procedure would increase Rhinehart's risk of serious harm, including death. Notwithstanding this recommendation, which was communicated to defendant Edelman, defendant Edelman refused to approve the procedure. *See id.*, ¶¶ 73-74 & Exs. CC-DD. These allegations are sufficient to raise a plausible claim that defendant Edelman was deliberately indifferent to Rhinehart's serious medical needs.

As defendants argue, as a general rule "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860 n.5. It is equally true, however, that "in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all." *Id*. Thus, "prison officials 'may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment.'" *Wright v. County of Franklin, Ohio*, 881 F. Supp. 2d 887, 903 (S.D. Ohio 2012) (quoting *McCarthy v. Place*, 313 Fed. Appx. 810, 814 (6th Cir. 2008)); *see also*, *Jones v. Muskegon County*, 625 F.3d 935, 944-45 (6th Cir. 2010). In particular, it is generally the case that "allegations that a prison official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference." *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999); *see also*, *Zackery v. Mesrobian*, 299 Fed. Appx. 598, 601 (7th Cir. 2008) (recognizing that "a defendant's decision to ignore a specialist's orders can raise an inference of deliberate indifference."); *Johnson v. Wright*, 412 F.3d 398, 404-05 (2d Cir. 2005) (holding that summary judgment to prison officials who denied particular treatment on basis of general policy regarding that treatment inappropriate where "every single one of plaintiff's treating physicians, including prison physicians, indicated to the defendants that [the treatment] was the medically appropriate course of treatment . . . and . . . there is no evidence suggesting that the defendants took any step whatsoever to investigate-let alone verify-whether it would be medically appropriate to ignore the unanimous advice of Johnson's treating physicians," noting that "a deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians."); *Weeks v. Hodges*, 871 F. Supp. 2d 811, 821 (N.D. Ind. 2012) ("[E]vidence

38

that a prison doctor ignored an outside specialist's instructions for a prison inmate is sufficient to survive a motion for summary judgment on a deliberate indifference claim.").

Here, plaintiffs have adequately alleged that defendant Edelman knew of both Rhinehart's need for expedited diagnosis and treatment of his liver condition and Rhinehart's need for the TIPS procedure, but failed to heed the treatment recommendations of Rhinehart's treating physicians. On a proper motion for summary judgment defendant Edelman may be able to show that his acts and omissions did not result from deliberate indifference, but from his own exercise of medical judgment. "A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs." *Acosta v. Naphcare*, No.2:09-cv-1998, 2010 WL 3522356, at *5 (D. Nev. Sept. 2, 2010) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *see also*, *Douglas v. Stanwick*, 93 F. Supp. 2d 320, 325 (W.D.N.Y. 2000); *Brewer v. Blackwell*, 836 F. Supp. 631, 644 (S.D. Iowa 1993). At this stage, however, the question is only whether plaintiffs have alleged sufficient facts to state a plausible claim that defendant Edelman exhibited deliberate indifference by failing to follow the recommended course of treatment. Plaintiffs' allegations, including that defendant Edelman knew of both Rhinehart's condition and the recommended treatment and that Edelman refused to provide this treatment for no apparent medical reason, are sufficient to state a deliberate indifference claim. Accordingly, the Court should deny the Corizon defendants' motion to dismiss with respect to plaintiffs' claims against defendant Edelman.

### d. Stevenson

Finally, with respect to the Corizon defendants, the Court should conclude that plaintiffs have failed to state a deliberate indifference claim with respect to defendant Stevenson. Plaintiffs

allege that Dr. Berhane noted on October 8, 2009, that she would coordinate with defendant Stevenson regarding Rhinehart's transfer to JCF.  *See* First Amended Compl., ¶ 30.  Plaintiffs further allege that Rhinehart was scheduled to see Dr. Stevenson on December 10, 2009, but that the appointment was cancelled, and that he was scheduled to see Dr. Stevenson on January 5, 2010, but that instead he saw Dr. Vemuri on January 4.  *See id.*, ¶¶ 42, 44-45.  Plaintiffs do not allege that Dr. Stevenson examined Rhinehart and failed to provide appropriate treatment.  Nor do they allege that Dr. Stevenson was the person responsible for cancelling the December 10 appointment.  Further, they do not allege that Dr. Berhane actually spoke with Stevenson and coordinated his transfer, or that Stevenson had any role in the transfer itself and the scheduling of Rhinehart's initial intake screening.  Essentially, the allegations against defendant Stevenson are no more than that an appointment to see Stevenson was cancelled by someone for unknown reasons.  This simple allegation is insufficient to state a plausible claim that defendant Stevenson was deliberately indifferent to Rhinehart's serious medical needs by disregarding a known risk to Rhinehart's health.  Accordingly, the Court should grant the Corizon defendants' motion to dismiss with respect to plaintiffs' claims against defendant Stevenson.

4. *Aetna*

### a. State Actor

With respect to defendant Aetna, the Court should conclude that plaintiffs have failed to state a claim under § 1983 because plaintiffs have failed to adequately allege that Aetna was a state actor subject to suit under § 1983.  As noted above, § 1983 liability attaches only to those who violate a person's rights while acting under color of state law.  Thus, in order to state a claim under § 1983, a plaintiff must "demonstrate that the party charged with the [constitutional] violation [is] a person

who may fairly be said to be a state actor.  This may be because he is a state official, because he has

acted together with or has obtained aid from state officials, or because his [conduct] is otherwise

chargeable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also NCAA*

*v. Tarkanian*, 488 U.S. 179, 191 (1988); *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982); *Simescu*

*v. Emmet County Dep't of Social Servs.*, 942 F.2d 372, 374 (6th Cir. 1991).  However, "[o]nly in rare

circumstances can a private party be viewed as a 'state actor' for Section 1983 purposes."  *Harvey*

*v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).  Where the defendants are not state officials, their

conduct will be deemed to constitute state action only if it meets one of three narrow tests.  The first

is the symbiotic relationship test, or nexus test, in which the inquiry focuses on whether "the state

has so far insinuated itself into a position of interdependence with the [private party] that it was a

joint participant in the enterprise." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 357-58

(1974).  Second, the state compulsion test describes situations "in which the government has coerced

or at least significantly encouraged the action alleged to violate the Constitution."  *NBC v.*

*Communications Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988); *accord Blum*

*v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970).

Finally, the public function test covers private actors performing functions "traditionally the

exclusive prerogative of the State." *Jackson*, 419 U.S. at 353; *accord West v. Atkins*, 487 U.S. 42,

49-50 (1988).  *See generally, Lugar*, 457 U.S. at 936-39 (discussing three tests); *Lowe v. Aldridge*,

958 F.2d 1565, 1572 (11th Cir. 1992) (same); *Kerans v. Porter Paint Co., Inc.*, 656 F. Supp. 267,

269-70 (S.D. Ohio 1987) (same).

        In their complaint, plaintiffs allege that "Aetna is in partnership as a subcontractor to

Defendant, Corizon, and has many responsibilities, including but not limited to, approval of medical

treatment and/or medical procedures for Michigan prisoners like Plaintiff, the employment of doctors, physicians, nurses, and medical staff, systematically monitoring clinical care, service activities, and related complaints of prisoners, . . . and was acting under the color of state law in carrying out its actions, duties, functions and responsibilities."  1st Amended Compl., ¶ 13.  The Amended Complaint further alleges that "[d]efendants, Corizon and Aetna, were responsible for ensuring the quality and adequacy of health care services provided to prisoners at JCF[.]"  *Id.*, ¶ 93; *see also*, *id.* ¶¶ 105, 141-44.  Plaintiffs argues that these allegations are sufficient to state a claim that Aetna was performing the traditional public function of providing health care to Michigan prisoners. In support of their argument, plaintiffs also point to various terms of the contract between Corizon and the State of Michigan.  The Court should reject plaintiffs' argument.

Plaintiffs, relying on the contract between Corizon and the State of Michigan, assert that "Aetna is a private corporation under exclusive contract with co-Defendant Corizon . . . and the MDOC . . . to provide all 'prisoner health services' to Michigan prisoners . . . ."  Pl.'s Br. in Resp. to Aetna's Mot. to Dismiss, at 3 (quoting *id.*, Ex. A, Corizon Contract, § 1.011).[5]  Plaintiffs further argue, relying on this contract, that "the State of Michigan has specifically delegated their obligation to provide prisoner health care and services to Corizon and Aetna," and that the "Corizon Contract . . . sets forth general 'Health Care Standards' to be provided by Aetna . . . ."  *Id.*  Plaintiffs continue that "[t]he Corizon Contract goes on to detail Aetna's duties to Michigan prisoners," and that "under the Corizon Contract Aetna agreed 'to Contract requirements for the Michigan Department of

---

[5]Because the contracts between the MDOC, Corizon, and Aetna are referred to in plaintiffs' complaint and are integral to their claims, the Court may consider these documents without converting Aetna's motion to dismiss into a motion for summary judgment. *See Welch v. Decision One*, No. 12-10045, 2012 WL 4008730, at *2 (June 25, 2012) (Randon, M.J.) (citing *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)), *magistrate judge's report adopted*, 2012 WL 4020976 (E.D. Mich. Sept. 12, 2012) (Rosen, J.); *see also*, *Nixon v. Wilmington Trust Co.*, 543 F.3d 354, 357 n.2 (6th Cir. 2008).

Corrections (MDOC) Quality Assurance Plan . . . .'" *Id*. at 3-4 (quoting *id*., Ex. A, App. C).

Plaintiffs argue that, "[u]nder the terms of the Corizon Contract, Aetna was responsible for the substantive oversight of implementation [sic] the entire health care system for Michigan prisoners . . . ." *Id*. at 4.  There is no doubt that this contract is sufficient to show that Corizon was responsible for performing the traditional state function of providing health care to Michigan prisoners. Plaintiffs' attempt to conflate Corizon's and Aetna's status, however, founders for the simple reason that Aetna was not a party to this contract.  The contract upon which plaintiffs rely was between Corizon and the State of Michigan; nothing in the contract indicates that Aetna was a party to, or a signatory of, this contract.  "It goes without saying that a contract cannot bind a nonparty." *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294(2002); *accord Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007) (recognizing "the fundamental principle of contract law prohibiting the parties to a contract from binding nonparties.").

Aetna's responsibilities are governed by the Administrative Services Agreement entered into between Aetna and Corizon.  *See* Aetna's Reply, Ex. A-1.  Under that agreement, Aetna contracted to provide Corizon access to its health care provider network, *see id*., Art. I, and to process and pay all claims for services provided to prisoners, *see id*., Art. II.  Aetna further agreed "to comply with and to be bound by all of the terms and conditions of the MDOC contract *related to the provision of Provider Network Services*," and specifically "to comply with the obligations set forth in Section 1.017, 2.031, 2.060, 2.110, 2.120, 2.130 and 2.200, 2.212, 2.230, and 2.260 of the MDOC Agreement."  *Id*., § I.A (emphasis added).  The obligations set forth in those sections all related to

43

matters of contract administration, not to the provision of health care to prisoners.[6]  Aetna did agree

to provide services such as credentialing, quality control, and review, but only in the context of

maintaining its provider network.  The Administrative Services Agreement makes clear that Aetna's

role was limited to being essentially a third-party administrator for off-site prisoner health care

services required by Corizon to treat Michigan prisoners.  *See, e.g.*, Aetna's Reply, Ex. A-1, § I

("[Corizon] shall contract directly with providers for the provision of on-site services.").  None of

plaintiffs' allegations, and nothing in the exhibits attached to their complaint, suggests otherwise.

And such a third party administrator, even when performing that role for the State, does not thereby

become a state actor.  Assuredly, Aetna in this role was performing a public function in the abstract

by providing a service to the State of Michigan.  For purposes of the public function test, however,

the question is not whether Aetna was performing a public function in the abstract.  Rather, the

question is whether the function performed by Aetna "has been 'traditionally the *exclusive*

prerogative of the State.'"  *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (quoting *Jackson v.

Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974)).  And the provision of insurance and third-party

administrative services are not the types of functions that have traditionally been the exclusive

prerogative of the State.  *Cf. American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 55-58 (1999)

(private insurers composing a utilization review organization to determine whether a treatment is

reasonably or necessary under state's workers' compensation act were not performing a traditional

---

[6]Specifically, those terms relate to: the state's right to contract with third parties and the contractor's responsibility to provide for employee drug testing, § 1.071; notice prior to media releases, § 2.031; contract management, § 2.060; protection of confidential information, § 2.100; maintenance and inspection of records, § 2.110; warranties made by the parties to each other, § 2.120; the contractor's obligation to carry liability insurance, § 2.130; the contractor's duty to comply with state and federal contract requirements governing discrimination, unfair labor practices, and workplace safety, § 2.200; compliance with local, state, and federal law, § 2.212; disclosure responsibilities, § 2.230; and state ownership of work product, § 2.260.  *See* Pl.'s Br. in Resp. to Aetna's Mot. to Dismiss, Ex. A.

public function when they withheld payment for disputed medical treatment); *Durso v. Kentucky Ass'n of Counties, Inc.*, 32 F. Supp. 2d 929, 931-32 (E.D. Ky. 1999) (county association that served as unemployment compensation fund's administrator was not performing a traditional public function).  Accordingly, the Court should conclude that Aetna is not a state actor subject to suit under § 1983.  *See Moses v. Prison Health Servs., Inc.*, No. 2:09-cv-236, 2011 WL 1044914, at *3 (W.D. Mich. Mar. 16, 2011), *aff'd*, No. 11-1507, slip op. at 3 (6th Cir. Dec. 16, 2011).

### b.  Policy or Custom

Alternatively, even if Aetna is a state actor, it is entitled to dismissal because plaintiffs have failed to adequately allege that the constitutional deprivations resulted from a deliberately indifferent policy or custom of Aetna.  As explained above in connection with Corizon, plaintiffs' amended complaint contains only generalized, conclusory allegations of a policy or custom of Aetna that caused the alleged constitutional violations.  Plaintiffs do not allege any specific policy or custom, nor do they even argue (as they do with respect to Corizon) that any policymaking official of Aetna or pattern of unconstitutional conduct with respect to Aetna created a custom or policy.  In this respect, plaintiffs' policy and custom claim as to defendant Aetna is even more deficient than their claim with respect to defendant Corizon.  Thus, for the reasons explained with respect to Corizon, plaintiffs' have failed to state a plausible claim for relief with respect to Aetna, even if Aetna can be considered a state actor for purposes of § 1983.  For this alternative reason, the Court should grant Aetna's motion to dismiss.

### 5.    MDOC Defendants

With respect to the MDOC defendants, the Court should conclude that each defendant is entitled to summary judgment either because they had no personal involvement in the alleged

45

constitutional violations, or because their conduct did not amount to deliberate indifference to plaintiff's serious medical needs.

### a. Scutt

Plaintiffs' complaint alleges that, at the times relevant to this action, defendant Scutt was the Warden at JCF.  *See* First Amended Compl., ¶ 6.  Plaintiffs allege that defendant Scutt "was responsible for the daily functioning and administration of JCF, including the safe, secure and humane treatment of all prisoners incarcerated there," and that she was "responsible for ensuring that measures to ensure [Rhinehart's] health and safety were initiated and maintained at JCF."  *Id.*, ¶ 94.  Beyond these supervisory roles as Warden, however, plaintiffs do not allege that defendant Scutt had any role in the diagnosis or treatment of Rhinehart's condition, or that she was in any way responsible for the delivery of health care to Rhinehart or any other prisoner.  As explained above, to establish defendant Scutt's liability plaintiffs must show that she, through her own acts or omissions and not those of her subordinates, was deliberately indifferent to Rhinehart's serious medical needs.  *See Iqbal*, 556 U.S. at 676.  Thus, in order to impose § 1983 liability on a supervisory official,

> [t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 73, 81 (6th Cir. 1995) (internal quotation omitted); *see also, Monell*, 436 U.S. at 693-95; *Birell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989).  Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory

46

personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

Here, there is no allegation that defendant Scutt directly participated in or encouraged the alleged denial of Rhinehart's proper medical care. Prison administrators are entitled to rely on the decisions made by medical personnel. *See Bond v. Aguinaldo*, 228 F. Supp. 2d 918, 920 (N.D. Ill. 2002); *Shelton v. Angelone*, 148 F. Supp. 2d 670, 678 (W.D. Va. 2001). Thus, as a general rule, "[i]f a prisoner is under the care of medical experts, . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also*, *Clark-Murphy v. Foreback*, 439 F.3d 280, 291 (6th Cir. 2006); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). Absent specific allegations or evidence that defendant Scutt was herself responsible for denying Rhinehart access to proper medical treatment, plaintiff has not properly set forth a constitutional violation. *See Franklin v. Gilless*, 870 F. Supp. 792, 796 (W.D. Tenn. 1994); *Thomas v. Rufo*, No. 92-10261-Z, 1994 WL 175047, at *4 (D. Mass. Apr. 20, 1994). Accordingly, the Court should conclude that defendant Scutt is entitled to summary judgment.

### b. Gardon

Plaintiffs' complaint alleges that, at the times relevant to this action, defendant Gardon was the Health Care Unit Manager at JCF. *See* First Amended Compl., ¶ 7. Plaintiffs further allege that, on November 23, 2009, Rhinehart wrote to Gardon to complain about the failure to receive any

intake screening or medical treatment since his arrival at JCF on October 27, 2009. Rhinehart received no response to this letter. *See id*., ¶ 39. On December 15, 2009, defendant Gardon completed a progress note indicating that Rhinehart had been scheduled for intake screening twice, but those had been cancelled for unknown reasons. Gardon indicated that, because the computer system would be inoperable shortly, she would try to have the intake done that afternoon, and that a follow-up appointment with the medical service provider would be scheduled as soon as possible. *See id*., ¶ 39 & Ex. T. Plaintiffs allege that defendant Gardon "failed to provide access to medical treatment and care, failed to take steps to protect [Rhinehart] from the significant risks associated with liver disease, [and] failed to follow established guidelines and/or failed to take steps to ensure the care, health and treatment of [Rhinehart]." *Id*., ¶ 95. In response, defendant Gardon avers that she first became aware that Rhinehart had not had an intake screening until mid-December 2009, and that upon becoming aware of this fact she scheduled an appointment for Rhinehart on December 29. *See* MDOC Def.s' Mot. for Summ. J., Ex. C, ¶¶ 10-11. This appointment was rescheduled for reasons unknown to her, and she was not involved in the rescheduling. *See id*., ¶ 11. Rhinehart was seen by Dr. Vemuri on January 4, 2010, and the subsequent tests determined that Rhinehart did not have liver cancer, "the primary concern for which Mr. Rhinehart said he was seeking an evaluation at that time." *Id*., ¶¶ 11-12. She further avers that in her position she "was a manager, not a medical provider," that she "had no personal involvement with the medical treatment decisions regarding, or medical care provided directly to, Mr. Rhinehart by the Medical Providers," and that she had no involvement with Rhinehart since her retirement on October 1, 2010. *Id*., ¶¶ 14-15.

Plaintiffs have not alleged or provided any evidence contradicting defendant Gardon's averments that she had no role in the medical treatment decisions involving Rhinehart. At most,

plaintiff's allegations show that defendant Gardon was involved in the scheduling of the initial intake screening.  Defendant Gardon avers, without contradiction, that she attempted to schedule an intake screening as soon as she became aware that Rhinehart had not yet had such a screening.  Even assuming that defendant Gardon was responsible for some of the delay in Rhinehart receiving an intake screening after his arrival at JCF, no allegation in the Amended Complaint gives rise to a plausible claim that this delay in scheduling was the result of deliberate indifference on the part of Gardon, rather than simply negligence.  As explained above, "'[d]eliberate indifference' means *recklessness* in a criminal, subjective sense:  disregarding a risk of danger so substantial that knowledge of the danger can be inferred.  Such disregard is tantamount to intending that the injury occur."  *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992) (quoting *McGill v. Duckworth*, 941 F.2d 344, 348 (7th Cir. 1991)) (citations omitted); *accord Farmer*, 511 U.S. at 836 (equating "deliberate indifference" to the "recklessness" standard under criminal law); *Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) (negligence insufficient to establish deliberate indifference); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988) (gross negligence insufficient).  Here, no allegation in the amended complaint plausibly alleges that defendant Gardon acted with this state of mind in failing to ensure that Rhinehart received a more timely intake screening.  Accordingly, the Court should conclude that defendant Gardon is entitled to summary judgment.

### c. Hamblin

Plaintiffs' claims against defendant Hamblin fail for the same reason.  Plaintiffs' complaint alleges that defendant Hamblin was, during the times relevant to this action, a Registered Nurse employed at JCF.  *See* First Amended Compl., ¶ 10.  Plaintiffs allege that, on December 8, 2009, defendant Hamblin responded to Rhinehart's kite complaining about the lack of an intake screening

49

and medical care since his arrival at JCF on October 27. *See id.*, ¶ 41. Hamblin's response indicated that Rhinehart's concerns would be forwarded to the medical service provider and that he would be scheduled for an intake screening. *See id.*, Ex. R. Plaintiffs allege that defendant Hamblin "made verbal threats to [Rhinehart] in reference to his urgent medical request," and that Hamblin told Rhinehart that he "was 'bugging her' and that she would put [him] on a call-out when she was ready." *Id.*, ¶¶ 90, 91. As with defendant Gardon, defendant Hamblin's role as alleged in the Amended Complaint was limited to the period involving the delay in the intake screening. Plaintiffs allege only that defendant Hamblin responded to Rhinehart's December 8, 2009, kite about this issue. At that time, defendant Hamblin forwarded Rhinehart's concerns to the medical service provider and indicated that Rhinehart would be scheduled for an intake screening, and scheduled a follow-up appointment of December 10. *See* MDOC Def.s' Mot. for Summ. J., Ex. A-6. Again, there is no allegation in the complaint that defendant Hamblin's failure to ensure that Rhinehart received a more timely intake screening resulted from defendant Hamblin's deliberately indifferent mental state, rather than from simply negligence or inadvertence. Accordingly, the Court should conclude that defendant Hamblin is entitled to summary judgment.

### d. Roberge (Clement), Ives, and Potter

Plaintiffs' complaint alleges that defendant Roberge, née Clement, was responsible for medical records at JCF during the times relevant to this action. *See* First Amended Compl., ¶ 8. Plaintiffs allege that defendant Ives was a Nurse Supervisor at JCF during the times relevant to this action. *See* First Amended Compl., ¶ 9. Plaintiffs allege that defendant Potter "was responsible for Managed Care" at JCF during the times relevant to this action. *See* First Amended Compl., ¶ 11. Plaintiffs' further allege that these defendants "failed to provide access to medical treatment and

50

care, failed to take steps to protect [Rhinehart] from significant risks associated with liver disease and other serious medical conditions, failed to follow established guidelines and medical plans, and/or failed to take other steps to ensure the care, health and treatment of [Rhinehart.]" *Id.*, ¶ 97. Apart from these allegations, plaintiffs' complaint is devoid of any allegations setting forth what these defendants did or did not do with respect to Rhinehart's medical care. Plaintiffs do not allege that these defendants examined or treated Rhinehart, or that they had any role in his treatment or care. In her affidavit, defendant Ives avers that her responsibilities as Nursing Supervisor included "general supervision over nurses, responding to grievances, creating nurses work schedule, and managing payroll," MDOC Def.s' Mot. for Summ. J., Ex. E, ¶ 5, and that she "had no personal involvement in any decision regarding or providing Kenneth Rhinehart's medical treatment, treatment plan, specialist referrals, or authorization for available tests, medicines, or surgical procedures." *Id.*, ¶ 6. Defendant Potter avers that her responsibilities were limited to entering information into the Electronic Medical Record (EMR); if a treatment request is authorized by Corizon, she simply "document[s] that authorization code in the EMR, which is then forwarded to the off-site appointment scheduler at Duane Waters Hospital." *Id.*, Ex. F, ¶ 4. More specifically, given her role she "had no decision making authority in whether or not Kenneth Rhinehart would be approved for an offsite," *id.*, and "had no personal involvement in deciding any aspect of Rhinehart's medical treatment or in providing or approving that treatment." *Id.*, ¶ 5. Similarly, defendant Roberge avers that her role as a Word Processing Assistant was limited to scheduling medical appointments pursuant to providers' requests. She schedules appointments based on available openings consistent with the service provider's "medical order specifying the inmate and the medical personnel they're ordered to see, as well as a window of time for the appointment." *Id.*,

51

Ex. G, ¶ 4.  In this role, she has "no personal involvement in determining what inmates see what medical provider, nor when an inmate may see a provider, except for implementing the requested appointment during the time window contained within a treatment order." *Id.*, ¶ 5,

From their averments, it is clear that these defendants performed only clerical or administrative roles in the provision of health care services to prisoners at JCF.  They had no role at all in medical decisions in general, or with respect to Rhinehart in particular.  No allegation of plaintiffs' complaint, no exhibit attached to plaintiffs' complaint, and no argument in their brief provides any basis for concluding that these defendants had any other role in the delivery of health care to Rhinehart or any other prisoner.  Ives's administrative role as a nurse supervisor, with no involvement in Rhinehart's actual medical care or treatment decisions, is not enough to establish that she was personally involved in the alleged deprivation of Rhinehart's rights. *See Angeles v. Wendt*, No. 3-97-CV-2692, 1999 WL 966427, at *4 (N.D. Tex. Oct. 22, 1999); *Holmes v. Fell*, 856 F. Supp. 181, 184 (S.D.N.Y. 1994); *cf. Perrey v. Donahue*, 703 F. Supp. 2d 839, 847 (N.D. Ind. 2010). Likewise, defendants Roberge's and Potter's clerical roles in scheduling appointments pursuant to medical providers' directives do not establish their personal involvement in the alleged denial of proper medical treatment to Rhinehart, in the absence of any allegation that they themselves delayed or denied appointments. *Cf. Hartsfield v. Colburn*, 491 F.3d 394, 398-99 (8th Cir. 2007) (prison official, whose role was limited to securing transportation for dental appointment scheduled by medical staff, was not personally involved where there was no evidence that official "den[ied] or delay[ed] [the plaintiff's] dental treatment by interfering with or overriding any medical staff decisions to schedule an earlier appointment.").  Accordingly, the Court should conclude that these defendants are entitled to summary judgment on plaintiffs' Eighth Amendment claims.

F.    *State Law Claims*

Finally, the parties dispute whether plaintiffs' state law claims of intentional infliction of emotional distress, battery, and gross negligence are properly pleaded.  Under Michigan law, a plaintiff asserting a medical malpractice claim must meet certain procedural requirements.  Notably, such a plaintiff must give a detailed notice to the defendant prior to filing suit, *see* MICH. COMP. LAWS § 600.2912b, and must file with the complaint an affidavit of merit by an appropriate expert witness, *see id.* § 600.2912d.  As the Michigan Supreme Court has explained, "'a complaint cannot avoid the application of the procedural requirements of a malpractice action by couching its cause of action in terms of ordinary negligence.'"  *Dorris v. Detroit Osteopathic Hosp. Corp.*, 460 Mich. 26, 43, 594 N.W.2d 455, 464 (1999) (quoting *McLeod v. Plymouth Court Nursing Home*, 957 F. Supp. 113, 115 (E.D. Mich. 1997)).  The court further explained that "[t]he determination whether a claim will be held to the standards of proof and procedural requirements of a medical malpractice claim as opposed to an ordinary negligence claim depends on whether the facts allegedly raise issues that are within the common knowledge and experience of the jury or, alternatively, raise questions involving medical judgment." *Id.* at 45-46, 594 N.W.2d at 465.[7]  As the Michigan Supreme Court has subsequently explained, "[a] medical malpractice claim is distinguished by two defining characteristics.  First, medical malpractice can occur only 'within the course of a professional relationship.  Second, claims of medical malpractice necessarily 'raise questions involving medical judgment.'"  *Bryant v. Oakpointe Villa Nursing Centre*, 471 Mich. 411, 422, 684 N.W.2d 864, 871 (2004).  Defendants argue that these two elements are met here and thus that plaintiffs' state law

_____

[7]Although *Dorris* involved a claim of ordinary negligence, the rule set forth in that case likewise applies to claims of gross negligence, battery, and intentional infliction of emotional distress.  *See Steele v. St. Lawrence Hosp. & Healthcare Servs.*, No. 283899, 2009 WL 1027208, at *5 (Mich. Ct. App. Apr. 16, 2009) (per curiam).

claims sound in medical malpractice.  Because of this, and because plaintiffs have not complied with the statutory prerequisites to suit, they are entitled to dismissal.  Plaintiffs counter that their claims do not raise questions of medical judgment beyond the common knowledge and experience of a jury, and thus they are not medical malpractice claims.

Congress has provided for limited, supplemental jurisdiction over state law claims that are related to federal claims over which a court has original jurisdiction:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . .

28 U.S.C. § 1367(a).  However, Congress has also provided that, among other reasons, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a)" if there are compelling reasons for doing so. 28 U.S.C. § 1367(c)(4).  In determining whether to exercise supplemental jurisdiction, courts should consider the following factors: judicial economy, convenience, fairness to litigants, and comity.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also, Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Here, comity counsels against exercising supplemental jurisdiction over plaintiffs' state law claims.  Michigan has established a thorough and complex set of procedures for asserting medical malpractice claims. Under § 1367, "interests of comity weigh against the exercise of supplemental jurisdiction given the procedural requirements in Michigan for filing a medical malpractice claim."  *Getter v. Doe*, No. 11-12021, 2012 WL 834556, at *6 (E.D. Mich. Mar. 12, 2012) (Cohn, J.); *see also*, *Reed-Bey v. Pramstallar*, No. 06-10934, 2012 WL 987830, at *6 (Feb. 15, 2012) (Whalen, M.J.), *magistrate judge's report and recommendation adopted*, 2012 WL 987854 (E.D. Mich. Mar. 23, 2012)

54

(Roberts, J.). This is particularly so here, where there is an initial, difficult question regarding the applicability of the malpractice procedural requirements to plaintiffs' claims. Plaintiffs' state law claims touch on an important issues of Michigan public policy, and "novel and complex issues of state law are raised by plaintiff's state law claims. Fundamental concepts of federalism and respect for the courts of the State of Michigan dictate that Michigan state courts be allowed to address these issues." *Williams v. Van Buren Township*, 925 F. Supp. 1231, 1238 (E.D. Mich. 1996) (Gadola, J.); *cf. Pactiv Corp. v. Chester*, 419 F. Supp. 2d 956, 967 (E.D. Mich. 2006) (Feikens, J.). Accordingly, the Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

G.      *Conclusion*

In view of the foregoing, the Court should conclude that: (1) plaintiffs have failed to allege a due process or equal protection claim against any defendant; (2) plaintiffs have failed to allege an Eighth Amendment claim against defendants Corizon, Vemuri, Stevenson, and Aetna; and (3) plaintiffs have failed to establish a genuine issue of material fact with respect to whether the MDOC defendants were deliberately indifferent to his serious medical needs. However, the Court should conclude that plaintiffs have alleged an Eighth Amendment claim against defendant Edelman. Accordingly, the Court should grant in part and deny in part the Corizon defendants' motion to dismiss, grant Aetna's motion to dismiss, and grant the MDOC defendants' motion for summary judgment. The Court should also decline to exercise supplemental jurisdiction over plaintiffs' state law claims, and should dismiss these claims without prejudice to plaintiffs refiling them in state court. If the Court accepts these recommendations, only plaintiffs' Eighth Amendment claim against defendant Edelman will remain pending.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 20, 2014                          s/ Paul J. Komives
                                              PAUL J. KOMIVES
                                              UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on June 20, 2014, electronically and/or by U.S. Mail.

                                              s/Michael Williams
                                              Case Manager for the
                                              Honorable Paul J. Komives

56