UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID L. RHINEHART and LEWIS
RHINEHART, Joint Personal
Representatives of the Estate of          Case No. 2:11-cv-11254
KENNETH A. RHINEHART,
Deceased,                                 HONORABLE STEPHEN J. MURPHY, III

        Plaintiffs,

v.

DEBRA SCUTT, et al.,

        Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR
SANCTIONS [308] AND ORDERING THE PARTIES TO MEDIATE**

Trial in the case is quickly approaching, and Plaintiffs recently moved the Court to bar

the testimony of one of Defendants' witnesses, permit Plaintiffs to redepose one of the

Defendants, and to sanction Defendants. For the reasons stated below, the Court will deny

the motion and order the parties to mediate one last time.

**BACKGROUND**

The case arises out of the medical treatments that the late Kenneth Rhinehart did and

did not receive while incarcerated. Although now prosecuted by the executors of his estate,

Rhinehart initiated the case pro se prior to his death. The instant motion concerns an

affidavit sworn to and submitted to the Court in the early days of the litigation.

Rhinehart filed the complaint on March 29, 2011. He also filed two pro se motions for

temporary restraining orders (TROs) — along with other motions — before his current

counsel filed an appearance on July 27, 2011. Counsel then filed a third motion for a TRO

on August 17, 2011. ECF 79. In this third motion, Rhinehart asked the Court to enter an

injunction ordering Defendants[1] to "schedule [Rhinehart] to be seen by a qualified liver specialist/oncologist/heptatologist so that he can receive a qualified treatment plan to prevent a more rapid onset of his advanced liver disease" and also order Defendants to schedule Rhinehart "for an appointment to see a liver specialist[.]" *Id.* at PgID 905.

In their response to the motion, Defendants argued that Rhinehart failed to make the showing necessary to justify entry of an injunction, and further explained that Rhinehart was both "an unlikely candidate for a liver transplant," and that it was not "medically necessary" to schedule Rhinehart to be seen by a "liver specialist/oncologist/hepatologist" because "a qualified treatment plan" was already in place and his medical needs were being met. ECF 83, PgID 959. Defendants supplemented their response with an affidavit from Dr. Richard Kosierowski, an oncologist who had been consulted in the care of Rhinehart. Kosierowski stated that he did not believe Rhinehart needed a consultation with an outside oncologist or liver specialist. ECF 89-1, PgID 1204.

Following the briefing, Magistrate Paul J. Komives issued a Report and Recommendation, suggesting the Court deny the motion. The magistrate judge emphasized that Rhinehart was receiving medical attention and had "at best, established a difference of opinion with respect to [his] medical treatment." ECF 121, PgID 1691–92. In explaining his conclusion, the magistrate judge mentioned that "[p]erhaps the most persuasive piece of evidence is Dr. Kosierowski's affidavit." *Id.* at 1691. The Court adopted the Report over Rhinehart's objections and denied the motion for a TRO. ECF 127.

---

[1] At that time, there were many other defendants in the case, including the prison warden, prison staff, and another doctor.

2

Rhinehart filed an interlocutory appeal of the Court's denial order, ECF 128, but the Court

of Appeals for the Sixth Circuit affirmed the Court's denial, ECF 135.

Four years later, Plaintiffs attack Kosierowski's affidavit. Plaintiffs recently deposed

Kosierowski and now claim that certain statements within the 2011 Affidavit "were not true

at the time the Affidavit was submitted, and that Dr. Kosierowski knew these statements

not to be true when he executed the Affidavit[.]" ECF 308, PgID 7296 (emphasis omitted).

According to Plaintiffs, Kosierowski, in writing the affidavit, erred in three ways:

(1) He misrepresented his relationship to Corizon,
(2) He misrepresented the basis for his conclusion and his familiarity with
Rhinehart's medical records, and
(3) He did not draft the 2011 Affidavit himself.

*See id.* at 7296–03. For relief, Plaintiffs ask the Court to (1) bar all testimony from

Kosierowski "except testimony elicited by Plaintiffs", (2) instruct the jury "regarding the

evidentiary effect of Defendants' knowing submission Kosierowski called as an adverse

witness and questioned before the jury" concerning the Affidavit of false evidence", (3)

allow Plaintiffs to redepose Defendant Edelman, and (4) award to Plaintiffs all the attorneys

fees and expenses related to the Affidavit.[2] *See id.* at 7314–15.

**DISCUSSION**

I.   Whether Kosierowski should be permitted to testify as a non-retained expert

Rule 26 of the Federal Rules of Civil Procedure governs witness disclosures, while

Rule 37 establishes the consequences for failure to comply with the rules. A party intending

to introduce expert witness testimony at trial must disclose to the other parties the identity

---

[2] The reimbursement sought is far reaching: Plaintiffs seek costs associated with the instant motion, as well as the cost of deposing Kosierowski, and all of Plaintiffs' associated fees and expenses from September 2011 (when the Affidavit was filed) to January 2013 (when the appeal was closed).

of the witness, and if the witness is "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," then the party offering the witness's testimony must accompany the disclosure with a written report "prepared and signed by the witness" Fed. R. Civ. P. 26(a)(2)(A),(B). If a party fails to comply with this requirement, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Plaintiffs argue that under Rule 26(a)(2)(B), Defendants were required to provide a signed, written report from Kosierowski. They claim that at the time he signed the Affidavit, he was employed by Corizon, and they further argue that his duties "regularly involve providing expert testimony, since he admitted providing such testimony was a 'somewhat routine' part of his job." ECF 308, PgID 7297–98 (quoting Kosierowski's deposition testimony). Plaintiffs argue that, because Defendants' disclosures did not include a report from Kosierowski, he may not be called as an expert witness at trial. *Id.* at 7313.

Kosierowski is not automatically a "retained expert" merely because he was (or is) an employee of Corizon — even if part of his duties involve giving expert testimony. As the Sixth Circuit has emphasized, "[a] treating physician . . . can be deposed or called to testify at trial without any requirement for a written report." *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869 (6th Cir. 2007), *as amended on denial of reh'g and reh'g en banc* (July 2, 2007) (quoting Fed. R. Civ. P. 26(a), cmt. 1993 Amendments, subdivision (a), para. (2)). This is so even if the physician's job incidentally requires him to participate in litigation with some frequency, because the purpose of the rule is to distinguish between experts who form their opinions in anticipation of litigation and those who form opinions in the regular course of

treatment. *See Ulbrick v. UPR Prod., Inc.*, No. CIV. 08-13764, 2011 WL 500034, at \*4 (E.D. Mich. Feb. 8, 2011) (making the distinction and collecting cases).

Kosierowski testified that he was involved with Rhinehart's treatment in February 2010, more than a year before Rhinehart had even filed suit. *See* Kosierowski Dep., ECF 308-3, 19:6–21. He testified that he has prepared "three or four" affidavits a year and that he does not get paid to prepare the affidavits. *Id.* at 52:5. In sum, Kosierowski is not the "retained expert" whose testimony is governed under Rule 26(a)(2)(B) — he is a treating physician who may be called upon to testify to discussions he had during Rhinehart's treatment and the opinions he formed at that time. *See* Expert Disclosures, ECF 308-2, PgID 7324. Accordingly, the Court will not bar his testimony at trial for failure to submit a report.

II.    <u>Whether Kosierowski satisfies the requirements of Rule 702</u>

Federal Rule of Evidence 702 permits a witness to testify in the form of an opinion, or give other helpful exposition, if he or she satisfies certain criteria of reliability and specialized knowledge. The Rule entrusts the Court with a "gatekeeping" role by obligating the Court to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). Still, "rejection of expert testimony is the exception, rather than the rule," and courts generally "permit testimony based on allegedly erroneous facts when there is some support for those facts in the record." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008).

Plaintiffs essentially challenge Kosierowski's testimony on two grounds. First, they argue that the 2011 Affidavit is actually untruthful. *See, e.g.*, Mot., ECF 308, PgID 7311

(accusing Kosierowski of "signing his name to an Affidavit based on a version of the claimed facts that he admitted was, in substantial part, simply not true."). Second, they allege that it was improper for Kosierowski to sign an affidavit that was prepared by counsel. Accordingly, they argue that Kosierowski fails to satisfy the requirements of Rule 702 and should not be permitted to testify.

The precise facts and statements are important here. In his affidavit, Dr. Kosierowski stated:

> I consult with Corizon Health Inc.'s Medical Director for Utilization Management for the State of Michigan. In this position, I make recommendations to the Medical Director, Adam Edelman, M.D., for the provision of medical care to patient-inmates by Corizon employees and contractors at correctional facilities maintained by the Michigan Department of Corrections (MDOC). These recommendations are based on my professional judgment as a medical oncologist, review of the specific medical history and condition of the patient-inmate, MDOC policies, national guidelines and standards, and research of medical literature concerning current appropriate treatment of the condition at issue.

ECF 89-1, PgID 1203. He also stated, "I have been consulted in the medical decision making process concerning Kenneth Rhinehart and am familiar with his medical history and records." *Id.* In his 2017 deposition, Kosierowski was asked about his review of Rhinehart's records:

> Q. Okay. And at some point in time, did you become involved with Mr. Rhinehart's treatment by reviewing some records and making some recommendations to Dr. Edelman or with Dr. Edelman?
>
> A. Again, Dr. Edelman and I discussed the management of the case. It was only recently that, you know, it actually involved looking at records.

ECF 308-3, 15:20–16:1. Later in the deposition, Plaintiffs' counsel asked Kosierowski about what he had reviewed prior to signing the affidavit:

Q. Now, back in 2010 when you first were contacted by Adam Edelman regarding this patient, you didn't see him, correct? You didn't actually see or visit Mr. Rhinehart; is that true?

A. Correct.

Q. Did you have a TeleMed conference with him?

A. Not that I recall.

Q. And did you see any labs at that time?

A. Not that I recall.

Q. So your conversations and recommendations to the defendant in this case Adam Edelman were based purely on your conversations over the phone and not any medical documents you were provided. Is that a fair statement?

A. Yes.

Q. So you never were given these labs by Dr. Edelman at the time to review and formulate a professional opinion; is that true?

A. Correct.

*Id.* at 57:3–21.

Counsel later pressed Kosierowski about the basis for his conclusions in the affidavit, asking, "Doctor, don't you find it reckless signing an Affidavit under oath regarding your opinion on the medical treatment for the deceased Kenneth Rhinehart without even looking at a single medical record?" *Id.* at 74:17–20. Kosierowski answered, "I commented on [Rhinehart's] oncologic care, which I found appropriate," and explained, "I relied on the information provided to me by Dr. Edelman." *Id.* at 74:21–22, 75:9–10. Kosierowski also stated, "I said I saw no evidence of cancer, no need to do an invasive procedure, and to this date, I still see no evidence of cancer." *Id.* at 75:1–3.

Counsel also questioned Kosierowski about the scope of his conclusions in the affidavit. In the affidavit, Kosierowski had concluded, "[b]ased upon my review of Mr.

Rhinehart's medical records and knowledge as an oncologist, Mr. Rhinehart likely has a benign process at this time. Therefore, he does not need a consultation with an outside oncologist or liver specialist." ECF 89-1, PgID 1204. So counsel asked him:

> Q. What qualifications do you have to make the determination that Mr. Rhinehart didn't need to meet with a liver specialist especially given these known complications that we just discussed?
>
> A. The patient wasn't having complications. I was called to discuss the problems he was having.
>
> Q. And that was when the scope of whether or not he had cancer, correct?
>
> A. Correct.
>
> Q. So you weren't brought in to discuss whether or not these known and serious complications of his cirrhosis required treatment by a liver specialist, were you?
>
> A. No.
>
> Q. And then why would you say that in your Affidavit, Doctor?
>
> A. The time for treatment of liver disease had passed. He has cirrhosis. Once you have cirrhosis, it's fairly straightforward what to do.

Kosierowski Dep., ECF 308-3, 61:7–25. And when pressed to confirm that he is "not qualified to give opinions or testimony regarding liver disease outside of the scope of cancer," Kosierowski demurred: "I think being a correctional care physician, the care of patients with advanced liver disease is very much within my scope of practice." *Id.* at 57:24–58:5.

After reviewing the entirety of the deposition, the Court finds no grounds to conclude, as Plaintiffs do, that Kosierowski "admitted" that substantial parts of his affidavit were "simply not true." Mot., ECF 308, PgID 7311. Kosierowski swore in his affidavit that he based his conclusions, in part, upon "review of the specific medical history and condition of" Rhinehart, and that he was "familiar with [Rhinehart's] medical history and records."

8

ECF 89-1, PgID 1203. As it turns out, he was made familiar with the records, not by reading them, but instead by conferring by telephone with Rhinehart's doctor. Those facts do not render the statements in the affidavit false. They simply mean that one doctor (Edelman) conveyed to a second doctor (Kosierowski) the relevant particulars of a patient (Rhinehart). With the information in hand, the second doctor applied his medical training to the facts at his disposal and reached a medical conclusion. Plaintiffs may challenge those conclusions as wrong, and a jury may agree. But the Court is currently tasked with evaluating Kosierowski's methods, not his conclusions. And Plaintiffs have not shown that those methods fail to pass muster under Rule 702.

The only argument remaining is that it was improper for counsel to draft the affidavit. Plaintiffs direct the Court to the reasoning of another judge in this district, who noted, "[d]etermining whether counsel crosses the line separating permissible assistance from improper participation in the expert's report writing calls for a fact-specific inquiry. The key question is whether counsel's participation so exceeds the bounds of legitimate assistance as to negate the possibility that the expert actually prepared his own report." *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 942 (E.D. Mich. 2014) (quotation marks and internal citations omitted).

In *Numatics*, the court addressed the report of a retained expert, not a treating physician. Specifically, the court evaluated the propriety of counsel ghostwriting a report pursuant to Rule 26(a)(2)(B), which must be "prepared and signed by the witness." But here, the Affidavit was no such report, and as noted, Kosierowski is not required to submit a report. Thus, the initial drafting of the Affidavit neither runs afoul of the rules nor impugns its reliability. Moreover, Kosierowski explained in his deposition why and how he arrived at

the conclusions contained in the Affidavit and reconfirmed those conclusions. *Cf. Syngenta Crop Prot., LLC v. Willowood, LLC*, No. 1:15-CV-274, 2017 WL 1133378, at *6 (M.D.N.C. Mar. 24, 2017) (distinguishing the expert in *Numatics* from a witness who, in his deposition, was "responsive to counsel's questions and demonstrated a firm understanding of his report"). Kosierowski is not a retained expert and there is nothing in the record to suggest that he was pressured to arrive at the conclusions he did. The Court will not preclude his expert testimony.

II.    Mediation

In denying Plaintiffs' instant motion, the Court has resolved all expert testimony disputes except for Defendants' renewed *Daubert* motion. The trial date is next month, and at the last hearing, both parties expressed their willingness to mediate one last time. The filing of motions seeking to preclude the admission of evidence by party opponents along with efforts by the lawyers to adjourn this six-year-old case evince that the parties are certainly not desirous of having a jury impose a winner-take-all outcome. As the Court has stated before, the stakes in the case are high, the issues and testimony are complex, and neither party should feel confident in a successful jury trial verdict. The Court will therefore order the parties to mediate with attorney Dennis Clark, of the Clark Law Firm, PLLC, pursuant to Local Rule 16.4.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Plaintiffs' motion for sanctions [308] is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall engage in mediation and settlement discussions with Dennis Clark no later than **Friday, May 12, 2017**. Upon receipt of this

Order, the parties shall contact Dennis Clark at (313) 962-2233 or djclarklaw@gmail.com. Each party is responsible for paying one half of Dennis Clark's fee, subject to later reappraisal by the Court if necessary.

Dennis Clark shall **NOTIFY** the Court within seven days of completion of mediation stating only the "date of completion, who participated, whether settlement was reached, and whether further ADR proceedings are contemplated." E.D. Mich. L.R. 16.4(e)(6). If a settlement is reached, the parties shall **NOTIFY** the Court immediately upon completion of mediation and **SUBMIT** a proposed order of dismissal within 21 days. *Id.* at 16.4(e)(7). If a settlement is not reached, the parties shall **NOTIFY** the Court within seven days of the completion of mediation.

     **SO ORDERED**.

                           s/Stephen J. Murphy, III
                           STEPHEN J. MURPHY, III
                           United States District Judge

Dated: April 19, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 19, 2017, by electronic and/or ordinary mail.

                           s/David P. Parker
                           Case Manager